TRACY POWELL TOOMER, ANDREA POWELL KEEFE, AND ERICA RENEE CLARK, PLAINTIFFS V. BRANCH BANKING AND TRUST COMPANY, AS TRUSTEE UNDER THE WILL OF JOAN BROWN WILLIAMSON AND AS SUCCESSOR-BY-MERGER TO UNITED CAROLINA BANK, AS EXECUTOR OF THE ESTATE OF JOAN BROWN WILLIAMSON AND TRUSTEE UNDER THE WILL OF JOAN BROWN WILLIAMSON, DEFENDANT

No. COA04-599

(Filed 21 June 2005)

### 1. Pleadings— dismissal—standards for appellate review

Appellate review of Rule 12(b)(6) and 12(c) rulings is de novo; a statute of limitations can provide the basis for dismissal on a Rule 12(b)(6) motion; and Rule 12(c) permits a party to move for judgment on the pleadings if the complaint reveals that claims are baseless.

### 2. Fraud— constructive—required allegation—benefit to defendant

Plaintiffs did not adequately assert claims for constructive fraud arising from the management of a trust, and the trial court correctly applied the three-year statute of limitations for breach of fiduciary duty rather than the ten-year statute of limitations for constructive fraud, where plaintiffs did not assert that defendant sought benefit for itself.

### 3. Fiduciary Relationship— breach of duty—statute of limitations—knowledge of facts by guardian

The statute of limitations for breach of fiduciary duty begins to run when an infant's guardian knew or should have known of the facts giving rise to the claim, and the trial court here did not err by dismissing plaintiffs' breach of fiduciary claims arising from management of a trust. Allegations that defendant failed to investigate and correct breaches of fiduciary duty did not revive the expired claims.

### 4. Fiduciary Relationship— breach of duty—delayed distribution of trust

An allegation of breach of fiduciary duty in delaying distribution of a trust for twenty-five days while a change of trustee was imminent should have been dismissed for failure to state a claim.

TOOMER v. BRANCH BANKING & TR. CO.

[171 N.C. App. 58 (2005)]

**5. Damages and Remedies— underlying claims barred—remedy not available**

An accounting was not available as a remedy for alleged breaches of fiduciary duty and constructive fraud in managing a trust where the underlying allegations did not sufficiently state a claim for relief or were barred by the statute of limitations.

Appeal by plaintiffs from judgment entered 2 February 2004 by Judge Gregory A. Weeks in Columbus County Superior Court. Heard in the Court of Appeals 14 February 2005.

*Erwin and Eleazer, P.A., by L. Holmes Eleazer, Jr., and Peter F. Morgan, for plaintiff appellants.*

*Murchison, Taylor & Gibson, PLLC, by Andrew K. McVey and W. Berry Trice, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiffs appeal from an order granting defendant's motion to dismiss and motion for judgment on the pleadings. We affirm.

I.

Plaintiffs Tracy Powell Toomer, Andrea Powell Keefe, and Erica Renee Clark are the children of the late Joan Brown Williamson, who died testate on 30 April 1982. Williamson's Will created three equal and separate trusts, one each for Tracy, Andrea, and Erica. In the Will, United Carolina Bank (UCB) was nominated executor of Williamson's estate and trustee of the trusts. The Will was admitted for probate in May 1982, at which time the superior court appointed UCB to be the executor of Williamson's estate. The superior court subsequently appointed UCB to be the trustee of each of the plaintiffs' trusts. Defendant Branch Banking and Trust Company (BB&T) is the successor-by-merger to UCB and has assumed UCB's liabilities.

On 31 July 2003, plaintiffs filed a complaint in which they purported to assert (1) claims by all plaintiffs against BB&T as successor-in-interest to UCB for constructive fraud; (2) claims by all plaintiffs against BB&T as successor-in-interest to UCB and as trustee under the Will for breach of fiduciary duty; (3) separate claims by Erica, Andrea, and Tracy against BB&T as successor-in-interest to UCB and as trustee under the Will for breach of fiduciary duty; and (4) claims by all plaintiffs against BB&T as successor-in-interest to UCB and as trustee under the Will for an accounting.

TOOMER v. BRANCH BANKING & TR. CO.

[171 N.C. App. 58 (2005)]

The complaint made the following pertinent factual allegations:

1. Plaintiff Tracy Powell Toomer . . . attained the age of majority on June 20, 1990. . . .

2. Plaintiff Andrea Powell Keefe . . . attained the age of majority on March 2, 1994. . . .

3. Plaintiff Erica Renee Clark . . . attained the age of majority on February 3, 1999.

. . . .

16. In approximately February or March of 1994, Arthur L. Clark ("Clark") in his capacity as Erica's guardian, began a preliminary audit of UCB's accounting with respect to the common trust account that had been established by the Estate prior to the establishment of separate trusts for each of the Plaintiffs.

17. On or about March 21, 1994, Clark completed his preliminary audit and advised the UCB Trust Officer, Richard H. Newton ("Newton"), of several apparent errors and/or anomalies in the valuation of certain assets belonging to one or more of the trusts as well as issues arising from trustee's fees and estate tax payments. In light of these errors and/or anomalies, Clark scheduled a meeting with Newton in April of 1994.

18. Following a[n] April 11, 1994, meeting with Clark, UCB specifically agreed to do the following:

a) Review all fee calculations in relation to its admitted error in its accounting regarding the value of a tract of real property owned by the Estate known as the "Foreman Tract," as well as its other fee calculations based upon discrepancies between market value of trust holdings as identified for purposes of calculation of fees and market value as shown on trust account statements;

b) Analyze and report upon the financial impact of the trustee's admitted error in the 1987 Fiduciary Income Tax Return, as well as make adjustments to Tracy's Trust for incorrect tax payments made by the trustee from 1990 through 1994;

c) Review the method of allocation of timber sale expenses and proceeds among the Beneficiaries' accounts, as well as the valuation and distribution of the timber holdings fol-

TOOMER v. BRANCH BANKING & TR. CO.

[171 N.C. App. 58 (2005)]

lowing the division of the common trust account into separate accounts.

19. By early May of 1994, UCB reported that it had corrected the initial inequality in distributions arising from the division of the common trust as well as the estate tax payment errors. However, Clark continued to correspond with UCB in May of 1994 regarding adjustments to its trustee fees and certain additional issues which were disclosed by his initial audit of the "farm account" established by UCB.

20. Following its own review of trustee fee calculations and tax accounting, UCB admitted in late May of 1994 that it had overcharged Tracy's Trust and Erica's Trust for trustee fees and had overpaid taxes on the sale of timber holdings in 1987 by nearly $23,000.00. According to correspondence from UCB Regional Trust Manager David V. Wyatt dated June 2, 1994, these errors were corrected by reimbursement to the Plaintiffs with interest on May 31, 1994. At that time, Mr. Wyatt also acknowledged certain additional errors had been made with respect to tax payments, income distributions, and other matters related to the farm account and reported that these errors had been corrected. All of these errors had been disclosed by Clark's May 1994 audit of the farm account.

21. On June 8, 1994, UCB wrote in a letter to Clark, Andrea, and Tracy that UCB had conducted an "extensive review" of the three trusts and the farm account, which review disclosed additional errors including insurance payments that had been made out of the wrong account and misallocation of timber sales proceeds. According to David Wyatt, these errors were corrected in early June of 1994. However, Clark was not able to conduct any further audit of the Plaintiffs' trust accounts in 1994 due to health and family problems. Plaintiffs allege[] upon information and belief that Clark was only able to review approximately forty percent (40%) of the transactions related to the trusts created by the Will in the course of his 1994 audit.

22. On February 7, 1999, four days after Erica's eighteenth birthday, Clark contacted Anthony C. Sessoms, Senior Vice-President for BB&T, regarding Erica's Trust. At that time, Clark requested that BB&T in its capacity as trustee provide information regarding the value of the assets in Erica's Trust

as well as take steps to completely segregate the property accounting for Tracy's Trust, Andrea's Trust, and Erica's Trust. Upon information and belief, no action was taken by BB&T in response.

23. On August 29, 2001, Erica sent a letter to Ann Smith, a trust officer with BB&T in Whiteville, North Carolina, advising that funds had been removed from Erica's Trust without the permission of either Erica or her guardians and demanding that such funds be replaced immediately with accrued interest.

24. Upon information and belief, Erica further alleges as follows with respect to the removal of the funds described in the preceding paragraph:

a) The removal of the funds took place on April 16, 1986; April 15, 1987; April 22, 1988; and April 27, 1994.

b) The total funds so removed were $14,388.73.

c) All of the funds were deposited into Andrea's Trust.

d) On each of the four occasions identified above on which funds were removed, a promissory note bearing interest at eight percent (8%), compounded annually, was issued in which Andrea's Trust was the promisor and Erica's Trust was the promisee.

25. Upon information and belief, BB&T took no immediate action in response to Erica's August 29, 2001, letter.

26. On February 12, 2002, Erica wrote a letter to BB&T President John Allison indicating that she had received no response to her August 29, 2001, letter. At that time, Erica also raised concerns regarding the combination of the farm holdings from each of the Plaintiffs' trust accounts into a single farm trust account.

27. On March 18, 2002, Senior Vice President Betsy B. Davis ("Davis") on behalf of BB&T provided a written response to Erica's August 29, 2001, and February 12, 2002, letters. In that response, BB&T admitted that the funds had been withdrawn from Erica's Trust in order to satisfy the tax obligations of Andrea's Trust. BB&T further advised that it would proceed with collection of the accrued interest and principal amounts due Erica's Trust upon the promissory notes in question, but

"[a]s there are no liquid assets to immediately satisfy the debt, we will need time to market the appropriate assets and raise the cash."

28. Clark wrote to BB&T on March 20, 2002, indicating that Erica had granted Clark a power of attorney for purposes of handling her dispute with BB&T over administration of the Plaintiffs' trusts. Clark also requested a meeting to discuss a variety of issues, including without limitation the following:

a) All issues that had been raised by Clark's 1994 audit . . . but never addressed by UCB;

b) The auditing procedures employed by BB&T's trust department to confirm the validity and accuracy of its trust accounting; and

c) The basis for BB&T's failure to ensure payment was made to Erica upon the promissory notes described in Paragraph 24 of the Complaint upon her demand on August 29, 2001.

29. On April 22, 2002, Clark provided Davis with a memorandum outlining some additional issues associated with three tobacco barns located upon the real property belonging to one or more of the Plaintiff[s] that were constructed, purchased, and/or moved utilizing funds from all three of the Plaintiffs' trust accounts. Clark requested that these issues also be discussed at any meeting between BB&T and Plaintiffs.

30. On April 30, 2002, Clark, Erica, Andrea, and Andrea's guardians (Joe and Cheryl Powell) met with Davis and certain other representatives of BB&T to discuss the Plaintiffs' concerns regarding the administration of the trusts created under the Will. The issues raised by Plaintiffs at that meeting included not only the [foregoing] issues . . . , but also the following (among others):

a) Failing to obtain an accurate appraisal of the farm lands owned by the Estate at the time of Williamson's death in 1982. UCB commissioned an appraisal by Clyde Elliott, one of its own employees, which appraisal upon information and belief overstated the fair market value of the properties in question by as much as thirty percent (30%). As a consequence, Plaintiffs' inheritance tax liability was significantly increased

and UCB collected inflated fees on Erica's Trust and Andrea's Trust from 1982 through 1989.

b) Overvaluation of certain real property known as the "Foreman Tract," which continued until the error was detected by UCB in 1990. Due to this error, UCB collected inflated fees on Andrea's Trust and Erica's Trust from 1985 through 1990.

c) Failing to accurately account for the harvest and sale of timber from the Plaintiffs' farm properties in 1987 by adjusting the value of those properties downward. This adjustment in value was not made until late 1989, and in the interim UCB collected trustee fees based upon inflated farm property values.

d) In conjunction with revaluation of the farm properties pursuant to a new appraisal obtained in 1989, UCB erroneously assigned a value of $29,500.00 to certain real property generally known as the "Pinkney Street Lot," which was over twice the previous value of the property. This valuation error was corrected by UCB in 1990, but not before UCB had collected trustee fees for 1989 from Erica's Trust and Andrea's Trust.

e) As part of the same reappraisal process in 1989 just described, UCB failed to adjust the value of a certain parcel of real property generally known as the "Zylphia Brown Farm" from $51,438 to its reappraised value of $29,500.00. This error continued until 1994. As a consequence, UCB collected fees on an inflated property value from 1989 through 1994.

f) The removal of funds from Andrea's Trust and Erica's Trust in 1986, 1987, 1988, and 1989, to pay taxes incurred by Tracy's Trust due to its ownership of certain real property generally known as the "Railroad Farm."

g) UCB erroneously removed several demand notes from Tracy's Trust on December 31, 1987, which error was corrected on December 31, 1988. However, prior to the correction, UCB collected trustees' fees based upon an inflated value for Tracy's Trust.

h) On May 3, 1993, UCB removed $3,640.94 from Erica's Trust and transferred it to Andrea's Trust without creating an

instrument to evidence the "loan" in either account. After this error was detected and reported to UCB by Clark in 1994, its trust officer represented to Clark that the money had been repaid to Erica's Trust in 1994. However, Clark discovered in 2002 that UCB had not in fact corrected this error.

. . . .

37. On October 22, 2002, Clark wrote a letter to BB&T's counsel in which he nominated Cheryl Powell to serve as the replacement trustee for BB&T. At that time, Clark also reminded BB&T that, contrary to the clear language of the Will, BB&T had failed to terminate Tracy's Trust when she reached the age of twenty-seven on June 20, 1999.

BB&T filed an answer, motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), and motion for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c). BB&T asserted, *inter alia*, that the applicable statutes of limitations barred plaintiffs' claims.

In an order entered 2 February 2004, the trial court concluded that plaintiffs' individual and collective claims for breach of fiduciary duty were barred by the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-52(1) and that plaintiffs had not stated a claim for constructive fraud. Accordingly, the court granted BB&T's motions to dismiss and for judgment on the pleadings. From this order, plaintiffs now appeal.

II.

[1] We begin our analysis with the standard of review. "On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted). Dismissal under Rule 12(b)(6) is proper if

> (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Id.* (citation omitted). "A statute of limitations can provide the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint establishes that plaintiff's claim is so barred." *Soderlund v. N.C. School of the Arts*, 125 N.C. App. 386, 389, 481 S.E.2d 336, 338 (1997).

N.C. Gen. Stat. § 1A-1, Rule 12(c) (2003) permits a party to move for judgment on the pleadings, after the filing of a responsive pleading, where the formal pleadings reveal that certain claims or defenses are baseless. *Garrett v. Winfree*, 120 N.C. App. 689, 691, 463 S.E.2d 411, 413 (1995).

> A motion for judgment on the pleadings pursuant to G.S. 1A-1, Rule 12(c), should not be granted unless "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."

*American Bank & Trust Co. v. Elzey*, 26 N.C. App. 29, 32, 214 S.E.2d 800, 802 (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (1969)), *cert. denied*, 288 N.C. 252, 217 S.E.2d 662 (1975).

This court reviews *de novo* rulings on motions made pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and (c). *See, e.g., Lea v. Grier*, 156 N.C. App. 503, 507, 577 S.E.2d 411, 414 (2003) (Rule 12(b)(6)); *Garrett*, 120 N.C. App. at 691, 463 S.E.2d at 413 (Rule 12(c)).

### III.

[2] The first issue on appeal is whether plaintiffs' complaint asserts only claims for breach of fiduciary duty or whether the complaint also states claims for constructive fraud. Plaintiffs contend that their complaint includes claims for constructive fraud, which are governed by a ten-year statute of limitations. We do not agree.

"When determining the applicable statute of limitations, we are guided by the principle that the statute of limitations is not determined by the remedy sought, but by the substantive right asserted by plaintiffs." *Baars v: Campbell Univ., Inc.*, 148 N.C. App. 408, 414, 558 S.E.2d 871, 875, *disc. review denied*, 355 N.C. 490, 563 S.E.2d 563 (2002). Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1) (2003).[1] *See Tyson v. N.C.N.B.*, 305 N.C. 136, 142, 286 S.E.2d

---

1. Specifically, N.C. Gen. Stat. § 1-52(1) (2003) requires "an action . . . [u]pon a contract, obligation or liability arising out of a contract, express or implied," to be brought within three years of the time that the cause of action accrues.

561, 565 (1982) (holding that where defendant accepted positions as executor and trustee, which created the fiduciary duties allegedly breached, and defendant received commissions or fees as executor and trustee, "[t]he overall transaction . . . [was] clearly contractual in nature . . . and any failure to perform in compliance with the duties as a fiduciary [was] tantamount to a breach of contract."). However, "[a] claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56 [2003]."[2] *Nationsbank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000).

"In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.' " *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Id.*

In the instant case, plaintiffs' complaint makes the following averments under the heading "Claims for Constructive Fraud by all Plaintiffs":

40. Plaintiffs, as the beneficiaries of trusts established under the Will, placed a special confidence in UCB during the time period that UCB served as trustee.

41. UCB, by accepting the appointment as trustee by this Court, obligated itself to act in good faith and with due regard to the interests of Plaintiffs.

42. By virtue of the foregoing, a fiduciary relationship was created between Plaintiffs and UCB which began on the date of UCB's appointment as trustee in 1984 and continued until the date of its merger with BB&T in 1997.

43. UCB utilized its fiduciary relationship with Plaintiffs, and more particularly its responsibility for management of the

2. N.C. Gen. Stat. § 1-56 (2003) provides that "[a]n action for relief not otherwise limited . . . may not be commenced more than 10 years after the cause of action has accrued."

assets and liabilities of Plaintiffs' respective trusts, for improper financial gain at the expense of Plaintiffs. UCB's abuse of its fiduciary relationship with Plaintiffs includes, but is not limited to, the collection of inflated trustees' fees arising from the following errors that were discovered by Clark during his partial audit of the trust accounts in 1994:

> a) The overvaluation of the Foreman tract . . . ;

> b) The failure to adjust property values following the harvest and sale of timber . . . ;

> c) Valuation errors arising from the Pinkney Street Lot and Zylphia Brown Farm . . . ; and

> d) The erroneous removal of several demand notes from Tracy's Trust on December 31, 1987 . . . .

44. UCB also abused its fiduciary relationship with Plaintiffs by collecting trustees' fees based upon an inaccurate appraisal of Plaintiffs' farm lands by UCB's own employee in 1982, which appraisal overstated the value of the appraised properties and thus significantly increased the trustees' fees which UCB was able to charge. This misconduct was discovered by Clark in March or April of 2002.

Noticeably absent is the required assertion that UCB sought to benefit itself. Indeed, plaintiffs' complaint characterizes UCB's behavior as "erroneous." Accordingly, plaintiffs have not asserted claims for constructive fraud. As plaintiffs' complaint alleges only breach of fiduciary duty claims, the trial court properly ruled that all of plaintiffs' claims are governed by the three-year statute of limitations contained in N.C. Gen. Stat. § 1-52(1).

This assignment of error is overruled.

IV.

[3] The next issue on appeal is whether the trial court erred by dismissing all of plaintiffs' breach of fiduciary duty claims. We conclude that the trial court's dismissal must be affirmed because all but one of plaintiffs' breach of fiduciary duty claims are barred by the statute of limitations, and the remaining allegation of breach fails to state a claim upon which relief may be granted.

For cases involving allegations that a trustee is in breach of its fiduciary duty, "[t]he statute of limitations begins to run when the

claimant 'knew or, [by] due diligence, should have known' of the facts constituting the basis for the claim." *Pittman v. Barker*, 117 N.C. App. 580, 591, 452 S.E.2d 326, 332 (quoting *Hiatt v. Burlington Industries, Inc.*, 55 N.C. App. 523, 530, 286 S.E.2d 566, 570, *disc. review denied*, 305 N.C. 395, 290 S.E.2d 365 (1982)), *disc. review denied*, 340 N.C. 261, 456 S.E.2d 833 (1995). If the materials before the court present a factual question as to when a plaintiff knew or should have known of the facts giving rise to the claim, then this issue must be submitted to the jury. *Dawn v. Dawn*, 122 N.C. App. 493, 495, 470 S.E.2d 341, 343 (1996). Under North Carolina law, " 'the statute of limitations begins to run against an infant . . . who is represented by a guardian at the time the cause of action accrues.' " *Bryant v. Adams*, 116 N.C. App. 448, 459, 448 S.E.2d 832, 837 (1994) (quoting *Trust Co. v. Willis*, 257 N.C. 59, 62, 125 S.E.2d 359, 361 (1962)), *disc. review denied*, 339 N.C. 736, 454 S.E.2d 647 (1995). Therefore, if an infant is represented by a guardian, the statute of limitations for a breach of fiduciary duty claim begins to run when her guardian knew or should have known of the facts giving rise to the claim. *See id.*

In the instant case, the vast majority of the breaches asserted by plaintiffs occurred prior to Arthur Clark's "preliminary audit" of the trust accounts in the spring of 1994. Clark's audit allegedly revealed a number of problems with the accounts, and at this point, plaintiffs were put on notice that there were possible problems with the administration of the trusts. As of that point, Tracy and Andrea had reached the age of majority, and Erica was being represented by a guardian. Accordingly, plaintiffs knew or should have known about any pre-1994 breaches within a reasonable amount of time following the 1994 audit. Thus, the three-year statute of limitations set forth in N.C. Gen. Stat. § 1-52(1) expired well prior to filing of plaintiffs' complaint on 31 July 2003.

Further, nearly all of the indiscretions which plaintiffs allege BB&T committed within three years prior to the filing of the complaint involve BB&T's failure to "investigate and correct" the breaches of fiduciary duty for which recovery is barred by the statute of limitations. Such allegations are insufficient to revive plaintiffs' expired claims.

[4] We note also that plaintiffs have averred that "BB&T breached its fiduciary duty to Andrea by failing to distribute all of the assets in [her] Trust . . . to her on March 2, 2003." Although this averment includes conduct which occurred within three years of the filing of

plaintiffs' complaint, it should have been dismissed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

To state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary failed to " 'act in good faith and with due regard to [plaintiff's] interests[.]' " *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004) (quoting *Vail v. Vail*, 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951)), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). In the instant case, plaintiffs' complaint states that Arthur Clark nominated a replacement trustee for BB&T on 22 October 2002 and that BB&T ceased being the trustee of plaintiffs' trust accounts on 27 March 2003. The complaint fails to offer any explanation as to how delaying distribution of Andrea's trust assets for twenty-five days while a change of trustee was imminent constituted a failure to act in good faith and with due regard for Andrea's interests.

These assignments of error are overruled.

V.

**[5]** The final issue on appeal is whether the trial court improperly disposed of plaintiffs' claim for an accounting. Plaintiffs contend that the trial court erred by dismissing this claim and by failing to set forth the grounds for the dismissal. We disagree.

Plaintiffs sought an accounting as an equitable remedy for the alleged breaches of fiduciary duty and constructive fraud. As the underlying allegations either fail to state a claim for relief or assert claims that are barred by the statute of limitations, the remedy sought is also unavailable. Moreover, given that the grounds for dismissal are readily discernible, we decline to remand for further conclusions of law from the trial court. *See O'Neill v. Bank*, 40 N.C. App. 227, 231, 252 S.E.2d 231, 234 (1979) ("The purpose for requiring findings of fact and conclusions of law is to allow meaningful review by the appellate courts.").

This assignment of error is overruled.

Affirmed.

Chief Judge MARTIN and Judge ELMORE concur.