KAREN B. ORR and MICHAEL TREXLER, Plaintiffs-Appellants v. RONALD D. CALVERT, Defendant-Appellee

No. COA10-480

(Filed 7 June 2011)

**Statutes of Limitation and Repose— fraud—misrepresentation —Securities Act violations—breach of fiduciary duty**

The trial court did not err by granting a directed verdict in favor of defendant based on expiration of the statutes of limitation. Plaintiffs' fraud, misrepresentation, North Carolina Securities Act violations, and breach of fiduciary duty claims were required to be filed within three years of their discovery of the facts giving rise to their claim. Under N.C.G.S. § 1-15(c), plaintiff Trexler's negligence claim must have been filed within one year of his discovery of his loss and plaintiff Orr's negligence claim was barred by the four-year statute of repose regardless of when she may have discovered her loss.

ORR v. CALVERT

[212 N.C. App. 254 (2011)]

Judge HUNTER, Robert N., concurring in part and dissenting in part.

Appeal by Plaintiffs from judgment entered 17 December 2009 by Judge Laura J. Bridges in Superior Court, Henderson County. Heard in the Court of Appeals 26 October 2010.

*Falls & Veach, by John B. Veach III, for Plaintiffs-Appellants.*

*Karolyi-Reynolds, PLLC, by Ronald W. Karolyi, for Defendant-Appellee.*

McGEE, Judge.

Karen B. Orr (Ms. Orr) and Michael Trexler (Mr. Trexler) (collectively Plaintiffs) filed a complaint against Ronald D. Calvert (Defendant) on 17 December 2007, alleging claims for fraud, misrepresentation, negligence, breach of fiduciary duty, and violations of the North Carolina Securities Act. Defendant answered and asserted that Plaintiffs' claims were barred by the statute of limitations. At the close of Plaintiffs' evidence, Defendant moved for a directed verdict on the following two grounds: (1) that Plaintiffs' claims were barred by the applicable statutes of limitation as to their claims for fraud, misrepresentation, negligence, and North Carolina Securities Act violations; and (2) that Plaintiffs presented insufficient evidence of a fiduciary duty owed by Defendant. The trial judge, in open court, granted Defendant's motion for directed verdict "on all counts . . . . [f]or either the Statute of Limitations or the Securities Violations Statute of Limitations."

## I. Facts

Plaintiffs' complaint contained the following allegations concerning Ms. Orr. Ms. Orr received $150,000 in "early 2003" from a life insurance policy in the name of her former husband. Defendant learned of Ms. Orr's insurance proceeds from his wife, who worked with Ms. Orr. Defendant then approached Ms. Orr regarding an investment opportunity. Ms. Orr took Defendant's recommendation and invested the entire $150,000 in a company called Resort Holdings International. Ms. Orr alleged that, "for about six months[,]" she received interest payments on her investment, but that the payments then stopped. Ms. Orr eventually confronted Defendant regarding her investment and Defendant told her three times that he would be "settling up[.]" Plaintiffs' complaint asserted that "Ms. Orr now realizes that all of the money that she entrusted to [Defendant] is gone." Ms. Orr further

alleged that Resort Holdings International was "part of a large scam" and that Defendant was aware of that fact, or should have been aware, when he encouraged Ms. Orr to invest.

Plaintiffs' complaint contained the following allegations concerning Mr. Trexler. Mr. Trexler had begun doing business with Defendant "in or around 2000." Defendant approached Mr. Trexler regarding an investment in a company known as Nexstar Communications. Defendant told Mr. Trexler that Nexstar Communications involved " 'point of sale' credit card terminals." Mr. Trexler, based on Defendant's "representations and assurances," invested $35,000 in Nexstar Communications "sometime around late January 2004." Mr. Trexler alleged he "totally relied" on Defendant. Mr. Trexler "received a few payments on his Nexstar investment and then the payments stopped." Plaintiffs' complaint further alleged that they "lost their enti[r]e investments as a result of [Defendant's] actions."

After Defendant answered and raised the defense of the statute of limitations, the matter was tried on 15 December 2009. At the close of Plaintiffs' evidence, Defendant moved for a directed verdict on the grounds stated above. The trial court heard arguments from the parties and granted Defendant's motion for a directed verdict on 17 December 2009. Plaintiffs appeal. Further facts will be discussed below as necessary.

## II. Accrual of Causes of Action

Plaintiffs argue that the trial court erred in granting Defendant's motion for a directed verdict on all claims based on the statute of limitations. Plaintiffs contend that they presented sufficient evidence to submit to the jury the question of whether their claims were barred by the statute of limitations. We disagree.

We review a trial court's ruling on a motion for directed verdict to determine " 'whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury.' " *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 720, 693 S.E.2d 640, 643 (2009) (citation omitted). A directed verdict in favor of a defendant is proper when, as a matter of law, the plaintiff cannot recover upon any view of the facts reasonably supported by the evidence. *Id.* However, "when the evidence is so considered, it must do more than raise a suspicion, conjecture, guess, surmise, or speculation as to the pertinent facts in order to justify its submission to the jury." *Transport Co. v. Insurance Co.*, 236 N.C. 534, 539, 73

S.E.2d 481, 485 (1952). " 'Once a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period [rests] on the plaintiff. A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired.' " *Shepard v. Ocwen Fed. Bank*, 361 N.C. 137, 139, 638 S.E.2d 197, 199 (2006) (citation omitted). "The issue of whether a cause of action is barred by the statute of limitations should be submitted to a jury '[w]hen the evidence is sufficient to support an inference that the limitations period has not expired[.]' " *Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 400, 653 S.E.2d 181, 183 (2007) (citation omitted).

We must therefore determine whether there was sufficient evidence presented at trial " 'to support an inference [by the jury] that the limitations period ha[d] not expired[.]' " *Id.* (citation omitted). In the present case, Plaintiffs asserted four causes of action in their complaint: (1) common law fraud and misrepresentation; (2) negligence; (3) breach of fiduciary duty; and (4) violation of the North Carolina Securities Act. Our determination of whether the statutes of limitations had expired for these claims will depend upon a determination as to when they accrued.

## A. Fraud

The applicable statute of limitations for fraud or misrepresentation is three years from discovery of the facts constituting fraud or misrepresentation. N.C. Gen. Stat. § 1-52(9) (2009) (three years for "relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake"). "[W]ith respect to a claim for fraud, we have defined "discovery' . . . as 'actual discovery or the time when the fraud should have been discovered in the exercise of due diligence.' " *Piles*, 187 N.C. App. at 403, 653 S.E.2d at 185 (citation omitted).

> "When . . . the fraud is allegedly committed by the superior party to a confidential or fiduciary relationship, the aggrieved party's lack of reasonable diligence may be excused. This principle of leniency does not apply, however, when an event occurs to 'excite [the aggrieved party's] suspicion or put her on such inquiry as should have led, in the exercise of due diligence, to a discovery of the fraud.' "

*Id.* at 404, 653 S.E.2d at 185 (citation omitted).

## B. Negligence

Plaintiffs' claims for negligence are based upon Defendant's alleged "breach[] [of] his professional duties." "The applicable statute of limitations for professional malpractice, negligence, and breach of contract is three years." *Harrold v. Dowd*, 149 N.C. App. 777, 781, 561 S.E.2d 914, 917 (2002). "The statute of limitations for a malpractice claim begins to run from [the] defendant's last act giving rise to the claim or from substantial completion of some service rendered by [the] defendant." *Id.* Ordinarily, "[a] cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the injuries cannot be discovered until a later date." *Id.*, 561 S.E.2d at 918.

N.C. Gen. Stat. § 1-15(c)(2009) provides the following:

Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]

Therefore, Plaintiffs' claims for negligence are subject to a three-year statute of limitations, which began running at the last act of negligent malpractice by Defendant. Plaintiffs argue they were unaware of their injury by reason of Defendant's deception and, therefore, contend that the three-year statute of limitations did not begin running until they discovered the fraud. Plaintiffs misunderstand the effect of the discovery provision of N.C.G.S. § 1-15(c). Rather, N.C.G.S. § 1-15(c) provides that, if

the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made[.]

Thus, if Plaintiffs did not discover their loss until two years after the last negligent act of Defendant, then Plaintiffs had one year from the date of discovery to file their action, and not three years, as they argue. N.C.G.S. § 1-15(c). Further, regardless of the date of discovery, Plaintiffs were barred by the outer limitation of four years from the last negligent act. *Id.*

In Plaintiffs' complaint, allegations of Defendant's negligence focused on Defendant's "recommending unsuitable investments." The particular facts are different for Ms. Orr and Mr. Trexler, and we address each in turn. Plaintiffs' complaint alleged that "[i]n late August, 2003, Ms. Orr agreed to meet with [Defendant] at his house to discuss the investment." The evidence introduced at trial shows that Ms. Orr actually gave money, for the purpose of investing, to Defendant in August and September 2003. Thus, the last act of Defendant "recommending unsuitable investments" occurred no later than September 2003. Therefore, Ms. Orr's complaint was required to have been filed no "more than four years from the last act of [Defendant] giving rise to the cause of action[,]" or by September 2007. In the present case, Plaintiffs' complaint was filed in December 2007 and, therefore, was not timely filed as to Ms. Orr. N.C.G.S. § 1-15(c).

Plaintiffs' complaint alleged that, "[b]ased on [Defendant's] representations and assurances, Mr. Trexler invested" money with Defendant "sometime around late January 2004." The evidence at trial showed that Mr. Trexler actually made his investment in February 2004. Thus, Plaintiffs' complaint filed in December 2007 was within the four-year maximum limit provided by N.C.G.S. § 1-15(c). However, Plaintiffs' complaint must have been filed within three years of the last act of Defendant giving rise to the cause of action, unless not discoverable by Mr. Trexler for more than two years, in which case Mr. Trexler had one year from the time of discovery. *See* N.C.G.S. § 1-15(c). Because three years after the last alleged negligent act of Defendant would have been February 2007, Plaintiffs' complaint was not timely filed unless Mr. Trexler was subject to the discovery provision of N.C.G.S. § 1-15(c). Because the discovery provision allows an action to be commenced within one year of discovery, Mr.

Trexler must show that he did not discover his loss until December 2006 in order for Plaintiffs' complaint to have been timely filed as to Mr. Trexler's negligence claim.

### C. Breach of Fiduciary Duty

Plaintiffs contend that it is "undisputed that [the statute of limitations for their] claim[s] for breach of fiduciary duty is ten years." In support of this contention, Plaintiffs point to Defendant's statement, made while arguing his motion for summary judgment before the trial court, that "we do not believe that there is a statute of limitations motion for the breach of fiduciary duty. Our determination is that there's a 10-year statute of limitations on the breach of fiduciary duty." Though the trial court's written judgment granting directed verdict does not state the reasons for its decision, in its ruling at trial, the trial court stated: "Directed verdict for [Defendant] on all counts as stated by [Defendant's] attorney. For either the Statute of Limitations or the Securities Violations Statute of Limitations." While the parties appear to agree that the applicable statute of limitations is ten years, we do not.

" 'When determining the applicable statute of limitations, we are guided by the principle that the statute of limitations is not determined by the remedy sought, but by the substantive right asserted by plaintiffs.' " *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005) (citation omitted). A ten-year statute of limitations applies to breach of fiduciary duty claims only when they rise to the level of constructive fraud. *See id.* ("Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1)[.]"). "[A] cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004). "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." *Id.*; *accord Toomer*, 171 N.C. App. at 67, 614 S.E.2d at 335 (" 'Implicit in the requirement that a defendant "[take] advantage of his position of trust to the hurt of plaintiff" is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself.' ") (citation omitted).

ORR v. CALVERT

[212 N.C. App. 254 (2011)]

In the present case, Plaintiffs' complaint contains the following allegations under the caption, "Count Three—Breach of Fiduciary Duty[:]"

34. Defendant owed fiduciary duties to [P]laintiffs because he undertook to act as their financial advisor and made investment recommendations and decisions on their behalf.

35. Defendant breached his fiduciary duties to [P]laintiffs.

36. Plaintiff was damaged as a result of [D]efendant's breach of fiduciary duty.

37. Plaintiffs are therefore entitled to recover from [D]efendant compensation for all their damages, plus prejudgment interest.

38. In addition, [P]laintiffs are entitled to recover punitive damages to punish [D]efendant's willful fraud and conscious indifference to the rights of [P]laintiffs.

We note in the present case, as in *Toomer*, that "[n]oticeably absent is the required assertion that [Defendant] sought to benefit [him]self." *Toomer*, 171 N.C. App. at 68, 614 S.E.2d at 336. Further, Plaintiffs' pleadings assert that Defendant "breached his fiduciary duties to plaintiff" rather than asserting that Defendant "took advantage of [a] position of trust[.]" *White*, 166 N.C. App. at 294, 603 S.E.2d at 156. Thus, Plaintiff's complaint asserts a clam for breach of fiduciary duty and not for constructive fraud.

We note that Plaintiffs' complaint did allege that "[o]n information and belief, [Defendant] received a large commission for selling Ms. Orr this fraudulent investment." However, "[a] plaintiff must allege that the benefit sought was more than a continued relationship with the plaintiff or payment of a fee to a defendant for work it actually performed." *Id.* at 295, 603 S.E.2d at 156. "This Court [has] held . . ., however, that an allegation of the payment of commissions for transactions actually performed is not sufficient to survive a motion to dismiss a claim for constructive fraud." *Id.* We therefore hold that Plaintiffs' breach of fiduciary duty claims do not rise to the level of constructive fraud and are subject to a three-year statute of limitations. *Toomer*, 171 N.C. App. at 66, 614 S.E.2d at 335. In cases regarding breach of fiduciary duty, " '[t]he statute of limitations begins to run when the claimant "knew or, [by] due diligence, should have known" of the facts constituting the basis for the claim.' " *Id.* at 68-69, 614 S.E.2d at 336 (citation omitted).

## D. North Carolina Securities Act

In their brief, Plaintiffs "acknowledge[] that the portion of their Securities Act claim[s] relating to the sale of unregistered securities by an unregistered agent was barred by a two year statute of limitation . . . and [we] should uphold [the trial court's] order on that limited claim." Because Plaintiffs make no argument challenging this portion of the trial court's judgment, they have abandoned this issue on appeal. N.C.R. App. P. 28(b)(6). However, Plaintiffs do argue that they alleged sufficient facts to support claims under N.C. Gen. Stat. § 78A-56. A claim brought pursuant to N.C.G.S. § 78A-56 must be filed within "three years after the [aggrieved] person discovers the facts constituting the violation[.]" N.C. Gen. Stat. § 78A-56(f) (2009). Thus, for the purposes of Plaintiffs' N.C.G.S. § 78A-56 claims, the relevant statute of limitations was three years, and began running at the time of discovery.

## E. Summary of Statutes of Limitation

The pertinent statutes of limitation for Plaintiffs' claims may be summarized as follows. For Plaintiffs' fraud, misrepresentation, North Carolina Securities Act violations, and breach of fiduciary duty claims, their complaint must have been filed within three years of their discovery of the facts giving rise to their claims. For Mr. Trexler's negligence claim, Plaintiffs' complaint must have been filed within one year of his discovery of his loss. N.C.G.S. § 1-15(c). Ms. Orr's negligence claim is barred by the four-year statute of repose, regardless of when she may have discovered her loss. *Id.* Thus, the issue now before us is when Plaintiffs discovered the facts giving rise to their claims.

## III. Directed Verdict

Plaintiffs' complaint was filed 17 December 2007. In order for it to have been timely filed as to Mr. Trexler's negligence claim, Mr. Trexler must have discovered his loss no earlier than 17 December 2006. For the remainder of Plaintiffs' claims, Plaintiffs must have discovered the facts giving rise to their other claims no earlier than 17 December 2004. Thus, we must review the evidence presented at trial to determine whether sufficient evidence was presented to allow the jury to determine whether either Ms. Orr or Mr. Trexler discovered, or should have discovered, the wrongs giving rise to their causes of action after the relevant dates.

### A. *Everts* and *Piles*

Though arising from different procedural postures than the case before us, we find instructive our Court's decisions in *Piles*, as well as *Everts v. Parkinson*, 147 N.C. App. 315, 555 S.E.2d 667 (2001). In *Everts*, the trial court had granted summary judgment in favor of the defendants on the grounds of the statute of limitations. Our Court reviewed the plaintiff's deposition testimony and found that "[t]he evidence produced during discovery indicates at least three possible points in time at which it might be determined that the alleged damage or defects became apparent or reasonably should have become apparent to [the] plaintiffs." *Everts*, 147 N.C. App. at 320, 555 S.E.2d at 671. In reciting that evidence, we noted three specific, articulated dates over the course of three years when the plaintiffs could have been found to have become aware of their injury.

> The [defendants] point to these [first] two points in time and contend that by at least March of 1994 the alleged damage was apparent or reasonably should have been apparent to [the] plaintiffs, and that their claim filed on 9 June 1997 is therefore barred by the three year statute of limitations.

*Id.* However, the "[p]laintiffs, on the other hand, point to a third point in time, February of 1996, and contend that they did not discover that their home suffered significant water intrusion damage and construction defects until this time." *Id.* This Court noted that, if discovery of the damages occurred in February 1996, then the plaintiffs' complaint was timely filed.

> We believe that the evidence produced during discovery allows at least an inference that the alleged damage was not apparent, and should not reasonably have been apparent, to plaintiffs prior to June of 1994. Thus, the issue of whether plaintiffs' claims against the [defendants] are barred by the statute of limitations is an issue for the jury, and the [defendants] are not entitled to summary judgment on this basis.

*Id.* at 320-21, 555 S.E.2d at 671. Thus, in *Everts*, this Court found the evidence sufficient to support an inference regarding discovery when there was evidence of three specific dates, and the jury was simply required to choose among them. *Id.* at 321, 555 S.E.2d at 671.

In *Piles*, our Court reviewed a trial court's granting of a Rule 12(b)(6) motion to dismiss based on the statute. of limitations. *Piles*, 187 N.C. App. at 402, 653 S.E.2d at 184. The issue therein involved a

ORR v. CALVERT

[212 N.C. App. 254 (2011)]

complaint alleging fraud and the dates the plaintiff discovered, or reasonably should have discovered, the fraud. *Id.* at 402-03, 653 S.E.2d at 184-85. "The date of [the plaintiff's] discovery of the alleged fraud or negligence—or whether she should have discovered it earlier through reasonable diligence—is a question of fact for a jury, not an appellate court." *Id.* at 405, 653 S.E.2d at 186.

This Court conducted the following analysis:

As such, the critical dates at issue in [the plaintiff's] complaint are when she discovered or reasonably should have discovered the alleged fraud or negligence committed by [the defendants], and when she was denied UIM coverage by [her insurer]. [The plaintiff] signed her insurance policy in 1998, was injured in the car accident in October 2000, settled with the other driver's insurance company, exhausting those policy limits, in November 2004, and subsequently filed this suit in November 2005. [The plaintiff] claim[ed] that she had no knowledge that her policy did not include UIM coverage until she was first informed of that fact by [her insurer] in February 2003. Additionally, she would not have acquired any contractual right to such coverage—if indeed it should have existed—until November 2004, when she exhausted the other driver's policy.

Likewise, according to the facts alleged in her complaint, [the plaintiff's] claims for breach of covenant of good faith and fair dealing with punitive damages and unfair and deceptive trade practices are premised at least in part on [her insurer's] actions in response to the claim she filed for UIM coverage. As such, they would have accrued in November 2004, when she was denied UIM coverage. Moreover, the basis of the constructive fraud claims clearly falls within ten years of the complaint, regardless of what dates are used. The breach of fiduciary duty claims also accrued when [the plaintiff] allegedly discovered that her policy did not include UIM coverage.

Thus, [the plaintiff] ha[d] asserted facts in her complaint "sufficient to support an inference that the limitations period has not expired," therefore, we find that the trial court erred by finding as a matter of law that her claims are time barred by the relevant statutes of limitations. We therefore reverse the trial court's dismissal on statute of limitations grounds of [the plaintiff's] claims for negligence, fraud, constructive fraud, breach of contract, breach of covenant of good faith and fair dealing with punitive

damages, unfair and deceptive trade practices, and breach of fiduciary duty.

*Id.* at 404-05, 653 S.E.2d at 185-86 (citations omitted).

While the analysis in *Piles* states that the date a plaintiff did in fact discover, or should have discovered, an alleged fraud "is a question of fact for a jury, not an appellate court[,]" we note that the complaint in *Piles* also contained numerous allegations of relevant dates. *Id.* Thus, the trial court in *Piles*, in ruling on a Rule 12(b)(6) motion, was able to forecast evidence of a timeline from which a jury would be able to answer the question of fact regarding the plaintiff's discovery. Therefore, in both *Everts* and *Piles*, the relevant facts before the trial court included dates and an established timeline. We next address the sufficiency of the evidence presented at trial in the present case.

## B. Ms. Orr

Our review of the transcript and exhibits in the present case shows that Ms. Orr testified that, after giving her money to Defendant to invest in August and September 2003, she received "some money from the investment for a while[,]" but that there came a time when the payments stopped. Ms. Orr did not testify as to what date the payments stopped. She called Defendant to ask him why her payments had stopped, and Defendant assured her that he would "take care of it." However, Ms. Orr further testified that "the months kept going by and every time I called [Defendant] he said, '[t]hey're working on it[.]' "

Ms. Orr also testified concerning a "delivery receipt" for a "universal lease" document. Ms. Orr testified that the receipt stated that " '[t]his lease documents [sic] were delivered to me [Ms. Orr] on the 20th day of September 2003.' " However, Ms. Orr testified that the receipt bore her signature and the date "3/26/04[.]" Ms. Orr indicated that the documents were not given to her on 20 September 2003, but instead had been kept by Defendant. Ms. Orr testified that Defendant did not give her the documents until she "asked for them a year later" when she "stopped getting the money." Finally, Ms. Orr testified that she commenced this action at some point subsequent to receiving the lease document. However, Ms. Orr did not specify a date when she received the lease documents other than clarifying that the receipt bore her signature, dated 26 March 2004. Ms. Orr did not state the date when she decided to take action against Defendant.

As stated above, in order for Plaintiffs' complaint to have been timely filed with respect to Ms. Orr's claims, Ms. Orr must have discovered the facts giving rise to her cause of action no earlier than 17 December 2004. Plaintiffs argue in their brief that "[t]he jury could have easily inferred that Ms. Orr continued to rely on [Defendant] and reasonably did not discover that she had been damaged until well after December 18, 2004, i.e. within the applicable statute of limitations." We disagree. Unlike the factual situations in *Everts* and *Piles*, there is no specific timeline established by the evidence here. The only specific dates in evidence are September and August 2003, when Ms. Orr gave her money to Defendant to invest. There are only vague references to time passing after Ms. Orr invested her money. The only other date involved the date on which Ms. Orr signed the receipt of her lease documents. The testimony is unclear on the relevance of the lease documents to the accrual of Ms. Orr's causes of action, but the fact that she signed them in March 2004, and thereafter commenced this action, does not strengthen Plaintiffs' argument that the jury could infer that Ms. Orr continued to rely on Defendant's assurances until December 2004.

For the jury to do as Plaintiffs argue, and infer that Ms. Orr relied on Defendant's assurances until after 17 December 2004, the jury would be basing such inferences on no more than " 'suspicion, conjecture, guess, surmise or speculation.' " *Hudgins v. Wagoner*, —— N.C. App. ——, ——, 694 S.E.2d 436, 442 (2010) (citation omitted). Thus, Plaintiffs failed to present sufficient evidence at trial to allow the jury to find that their complaint was timely filed with respect to Ms. Orr. *Compare Hudgins*, —— N.C. App. at ——, 694 S.E.2d at 442 ("After the trial, the jury entered a verdict in which they found, *inter alia*, that plaintiff neither knew nor should have known prior to 12 December 2003 of activities taken by Wagoner or WKS with respect to the Property 'after late June 2000.' At trial, defendants claimed that plaintiff should have had knowledge of the events in question in July 2000. However, plaintiff testified that he did not know about the development until 2006. [The] [p]laintiff corroborated his testimony with the timing of his filing, which occurred immediately after the time he testified he discovered defendants' actions. [The] [p]laintiff's testimony, consistent with his explanation of his actions, is more than a '[m]ere scintilla of evidence,' enabling a jury to make a decision based upon more than just 'suspicion, conjecture, guess, surmise or speculation.' ") (citation omitted).

ORR v. CALVERT

[212 N.C. App. 254 (2011)]

## C. Mr. Trexler

Our review of the transcript reveals the following evidence with respect to Mr. Trexler. Mr. Trexler was approached by Defendant "some time in 2003 or 2004" and informed about an investment on which Defendant would guarantee twelve percent interest. Mr. Trexler actually invested in Nexstar Communications on 12 February 2004 and he received "approximately" $5,500 "in interest" payments, but then the payments stopped. Mr. Trexler received assurances from Defendant that "everything is going to be back to normal[.]" Mr. Trexler testified that he learned that something was wrong with the Nexstar Communications investment when he "got a letter from a lawyer in Florida that [was] handling the case." Mr. Trexler did not testify as to when he received this letter, and the letter was not included in the record of this case.

In their brief, Plaintiffs contend that the jury could have made the following chain of inferences:

Mr. Trexler testified that he received about $5,500 in interest payments and then the payments stopped. . . . Mr. Trexler testified that [Defendant] told him he would receive twelve percent interest on his $35,000 investment in Nexstar. . . . The jury could therefore reasonably infer that Mr. Trexler received interest payments of $350 a month. Since Mr. Trexler received $5,500, the jury could reasonably conclude that he received the interest payments for at least 15 months, or at least until May 2005.

We first note that, even if Plaintiffs are correct in their argument, the May 2005 date they argue in their brief would be much earlier than the December 2006 cutoff date for Mr. Trexler's negligence claim. However, as with the evidence presented by Ms. Orr, we find Mr. Trexler's testimony insufficient to submit the issue to the jury for his remaining claims as well. The series of inferences which Plaintiffs contend the jury could make is simply inference upon inference without any support in the record. For the jury to make a determination that Mr. Trexler discovered his injury on or after 17 December 2004, the jury would have to assume each of the facts suggested above in Plaintiffs' chain of inferences. As with Ms. Orr's evidence, Mr. Trexler's chain of inferences would invite the jury to engage in no more than " 'suspicion, conjecture, guess, surmise or speculation' " and is, therefore, insufficient to support submitting the question to the jury. *Id.* (citation omitted). As Plaintiffs failed to present evidence sufficient to submit their claims to the jury, the trial court properly

granted Defendant's motion for directed verdict. We, therefore, affirm the trial court's order granting a directed verdict in favor of Defendant.

Affirmed.

Judge BEASLEY concurs.

Judge HUNTER, JR. concurs in part and dissents in part by separate opinion.

HUNTER, JR., Robert N., Judge, concurring in part and dissenting in part.

While I agree with the majority opinion that the trial court properly dismissed Plaintiffs' claims for common law fraud, misrepresentation, negligence and violation of the North Carolina Securities Act, I disagree with the majority's conclusion that Plaintiffs' breach of fiduciary duty or constructive fraud claim is beyond the applicable ten-year statute of limitation.

The majority rests its conclusion exclusively on *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 614 S.E.2d 328 (2005). Until our Supreme Court's opinion in *Barger v. McCoy Hillard and Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997) there was no distinction between the elements of constructive fraud and breach of fiduciary duty; the elements were essentially the same. In *Barger*, our Supreme Court took the position that "[i]mplicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Id.* at 666, 488 S.E.2d at 224 (second alteration in original). There is considerable difficulty in applying this notion of a defendant seeking his own advantage in actions for constructive fraud and breach of fiduciary duty because of the burden-shifting involved in analyzing both torts.

In establishing the elements of either tort, the initial burden of proof is on the plaintiff to "allege the facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950).

Our pattern jury instructions summarize the law as follows:

"Did the plaintiff take advantage of a position of trust and confidence to bring about (identify transaction)?"

On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove, by the greater weight of the evidence, two things:

First that a relationship of trust and confidence existed between the plaintiff and the defendant. Such a relationship exists where one person places special confidence in someone else who, in equity and good conscience, must act in good faith and with due regard for such person's interests. . . .

And Second, that the defendant used *his* position of trust and confidence to bring about (*identify transaction*) to the detriment of the plaintiff and for the benefit of the defendant.

N.C.P.I.–Civ. 800.05 (2010).

The second phrase, "for the benefit of the defendant," has been, in my view, improperly inserted in the plaintiff's case-in-chief and rather should be inserted in the defendant's affirmative defense of openness. Where a confidential relationship is alleged to have been abused, the specific benefit question should clearly be a defensive matter. It should be shown by the defendant that he dealt with the plaintiff fairly, and the plaintiff should not be required to prove advantage was taken as an initial element of his case-in-chief. Our case law appears to require this element in the plaintiff's case-in-chief, which is problematic given the presumption of fraud to which a plaintiff is entitled from the initial showing of a confidential relationship.

In this case, Plaintiffs' proof meets both requirements. The uncontested facts show Defendant was not properly licensed under state or federal law. Without a license, he was legally prohibited from marketing the securities, advising anyone on the suitability of financial transactions, or charging or collecting any sales commissions from the marketing or sale of securities. The transactions herein clearly involve the sale of securities. It is undisputed Defendant obtained some commissions in this case to which he would not have been legally entitled. When a defendant is not licensed at all, the receipt of an illegal commission would clearly meet the factual predicate that the transaction was "to the detriment of the plaintiff and for the benefit of the defendant."

**ORR v. CALVERT**

[212 N.C. App. 254 (2011)]

The majority opinion would dismiss Plaintiffs' Complaint on the grounds that " '[a] plaintiff must allege that the benefit sought was more than a continued relationship with the plaintiff or payment of a fee to a defendant for work it actually performed.' *White*, 155 N.C. App. at 295, 603 S.E.2d at 156." In *White*, the defendant was an employee of a *licensed* broker. Thus, he was legally entitled to receive a commission or to have a "continuing relationship" with regard to the plaintiff and to charge a commission.

In this case, the alleged tortfeasor is an individual, not an employee of a legally licensed entity, who began a series of acts which were the equivalent of rendering securities advice or marketing securities in violation of N.C. Gen. Stat. § 78A-36. Unlike the parties in *White*, Defendant is not entitled to any legal commission for his advice. The "benefit received" is completely illegal.

The second ground for the majority's dismissal is that Plaintiffs only alleged a "breach of fiduciary" claim rather than a claim for constructive fraud because the Complaint lacks an allegation of entrustment or placing of trust. In my view, this is a distinction without a difference. In a constructive fraud claim, the allegation of a trust relationship arises from the facts alleged. Clearly, in this case the confidence of Plaintiff was entrusted to Defendant through the transactions alleged in paragraphs 4 through 14 of the Complaint.

Furthermore, the only material difference between breach of fiduciary duty and constructive fraud, in this context, is that the law presumes a confidential relationship of trust exists if certain fiduciary relationships are present. Indeed an instruction on confidence is mandatory in these situations.[1] The agent-principal relationship alleged here is clearly sufficient to meet this requirement.

Under these facts, I would hold Plaintiffs have established facts sufficient to survive a summary judgment motion based upon a ten-year statute of limitation.

I would reverse the trial court and remand for a trial on breach of fiduciary duty.

---

1. The pattern jury instruction for constructive fraud provides for a peremptory instruction where the evidence shows a fiduciary relationship: "In this case, members of the jury, the plaintiff and the defendant had a relationship of *(name presumptive fiduciary relationship, e.g., . . . agent and principal, etc.)* You are instructed that, under such circumstances, a relationship of trust and confidence existed." N.C.P.I.-Civ. 800.05 (2010).