**SAMOST v. DUKE UNIV.**

[226 N.C. App. 514 (2013)]

ALBERT H. SAMOST AND TIMOTHY E. SHAUGHNESSY, PLAINTIFFS
v.
DUKE UNIVERSITY, DEFENDANT

No. COA12-635

Filed 16 April 2013

**Contracts—breach—judgment on the pleadings**

   The trial court did not err by entering judgment on the pleadings in favor of defendant on the grounds that plaintiff's complaint did not adequately assert a breach of contract claim.

Judge Hunter, Robert C. dissenting.

Appeal by plaintiffs from order entered 12 January 2012 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 10 December 2012.

*Ekstrand & Ekstrand LLP, by Robert C. Ekstrand and Stefanie A. Smith, for plaintiffs.*

*Ellis & Winters LLP, by Paul K. Sun, Jr. and Nora F. Warren, for defendant.*

ERVIN, Judge.

   Plaintiffs Albert H. Samost and Timothy E. Shaughnessy appeal from an order granting Defendant Duke University's motion for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c), and dismissing their complaint with prejudice. On appeal, Plaintiffs argue that the trial court erred by entering judgment on the pleadings in favor of Defendant on the grounds that their complaint, when considered in light of the applicable standard of review, adequately asserted a breach of contract claim. After careful consideration of Plaintiffs' challenge to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I.  Factual Background

### A.  Substantive Facts[1]

Plaintiffs, who were seniors at Duke University in the spring of 2011 and had completed all prerequisites for graduation, lived in off-campus housing. Although each Plaintiff lived in his own house, their houses, along with three additional houses associated with a fraternity to which Plaintiffs belonged, shared a one-acre backyard.

On 2 April 2011, Plaintiffs hosted a party. At approximately 4:45 p.m. on that date, a neighbor requested that Plaintiffs turn down their music. Although Plaintiffs honored this request, the neighbor's husband made a complaint to Dr. Phail Wynn, Defendant's Vice President of Durham and Regional Affairs, in which he asserted that the noise continued even though the music had been turned off.

Based on the neighbor's complaint concerning the noise level at the 2 April 2011 party, Assistant Dean of Students Christine Pesetski notified Plaintiffs that she would be investigating their conduct in accordance with Defendant's disciplinary system, which is set forth in the "Bulletin of Duke University, The Duke Community Standard in Practice: A Guide for Undergraduates." This document, which the parties refer to as the Bulletin, is published each academic year, "expresses a standard for behavior – a set of expectations of students who claim membership in Duke's learning community," and includes provisions governing the undergraduate disciplinary process. All incoming undergraduates are required to sign a pledge to adhere to the provisions of and values reflected in the Bulletin.

On 8 April 2011, Plaintiffs hosted another party in their backyard. During this party, two officers of the Durham Police Department appeared. After conversing with Plaintiff Shaughnessy, the officers cited him for violating the City of Durham's noise ordinance. Assistant Dean Pesetski learned about the 8 April 2011 incident and notified Plaintiffs that she would be investigating the events which occurred on that occasion as well.

Although the Bulletin provides that an accused student will have an initial Administrative Hearing and receive an informal resolution offer in lieu of a referral to the Undergraduate Conduct Board, Plaintiff Samost was not extended such an informal resolution offer. Instead,

---

1. Consistent with the applicable standard of review, the factual statement set out in the body of this opinion is drawn from the allegations contained in Plaintiffs' complaint and documents referenced in that complaint that were attached to the parties' pleadings.

Assistant Dean Pesetski simply referred the accusations against him to the Undergraduate Conduct Board. Although Plaintiff Shaughnessy was offered a suspension in lieu of further discipline, he declined to accept that proposal. As a result, both Plaintiffs were charged with "Disorderly Conduct, Guests, and Other – Violating Ordinances and/or Laws."

A disciplinary hearing was held before a five-member Undergraduate Conduct Board panel on 4 May 2011. At the conclusion of the hearing, the panel found that neither Plaintiff had played an active role in creating the allegedly excessive noise and were not, for that reason, responsible for engaging in disorderly conduct. However, the panel found both Plaintiffs responsible for violating Defendant's "Guest" rule and found Plaintiff Shaughnessy responsible for violating Defendant's "Other - Violating Ordinances and/or Laws" rule. As a result, the panel suspended Plaintiffs for two semesters and ordered them to perform 50 hours of community service.

On or about 10 May 2011, Plaintiffs appealed the panel's decision to the Appellate Board. In their challenge to the panel's decision, Plaintiffs pointed out the absence of any evidence indicating that they had personally engaged in any culpable conduct, argued that they had impermissibly been disciplined based upon the conduct of others, and contended that their chances for a more favorable outcome at the hearing had been harmed by numerous procedural irregularities, including the fact that the only evidence heard by the panel took the form of statements made by individuals who were not present at the hearing, the fact that their conduct had been evaluated by an individual whose previous statements established that she was biased against them, the fact that they did not receive adequate notice of the hearing or the evidence that would be presented against them, and the fact that the hearing had been scheduled at a time when their advisors could not attend. On 12 May 2011, the Appellate Board vacated the panel's decision and remanded the matter for a new hearing before a different panel. The Appellate Board made this decision on the grounds that there was "relevant new information" presented in support of Plaintiffs' appeal and because of its "concerns about some of the procedural issues" that Plaintiffs had raised. Although the Appellate Board agreed to allow Plaintiffs to participate in the upcoming commencement exercises, it also decided that Plaintiffs' diplomas and transcripts would be "held back until such time as all charges have been resolved through the conduct system." Instead of proceeding with the new hearings ordered by the Appellate Board, however, Plaintiffs instituted this civil action against Defendant.

SAMOST v. DUKE UNIV.

[226 N.C. App. 514 (2013)]

### B. Procedural History

On 13 May 2011, Plaintiffs filed a complaint and a request for the issuance of a temporary restraining order and a preliminary injunction in which they alleged that Defendant had breached a contract with Plaintiffs and requested an award of compensatory and punitive damages and temporary, preliminary, and permanent injunctive relief barring Defendant from involuntarily withdrawing Plaintiffs from the University, re-trying Plaintiffs for conduct which had already been found not to have occurred, and continuing to subject Plaintiffs to disciplinary proceedings. After a hearing held on the same afternoon with respect to Plaintiffs' request for the entry of a temporary restraining order, Defendant agreed to allow Plaintiffs to graduate and receive their diplomas, as well as to terminate the disciplinary proceedings without further consequences to Plaintiffs.

On 12 August 2011, Defendant filed an answer in which it admitted certain allegations set out in Plaintiffs' complaint, denied other allegations set out in Plaintiffs' complaint, and asserted various affirmative defenses. On the same date, Defendant filed a motion for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c). After a hearing held on 9 January 2012, the trial court entered an order granting Defendant's motion and dismissing Plaintiffs' complaint with prejudice on 12 January 2012. Plaintiffs noted an appeal to this Court from the trial court's order.

### II. Legal Analysis

### A. Standard of Review

A trial court's ruling on a motion for judgment on the pleadings is subject to *de novo* review on appeal. *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005). In determining whether to grant a motion for judgment on the pleadings,

> [t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

**SAMOST v. DUKE UNIV.**

[226 N.C. App. 514 (2013)]

*Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (internal citations omitted). "A motion for judgment on the pleadings . . . should not be granted unless 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.' " *American Bank & Trust Co. v. Elzey*, 26 N.C. App. 29, 32, 214 S.E.2d 800, 802 (quoting 5 C. Wright and A. Miller, Federal Practice & Procedure § 1368 (1969)), *cert. denied*, 288 N.C. 252, 217 S.E.2d 662 (1975). For that reason, "[t]he [motion's] function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit," with "[a] motion for judgment on the pleadings [being] the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. We will now utilize this standard of review to determine whether the trial court correctly granted Defendant's motion.[2]

B.  Sufficiency of Plaintiffs' Complaint

"The elements of a claim for breach of contract are (1) [the] existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). "In the obligations assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes the breach." *Sale v. Highway Comm'n*, 242 N.C. 612, 619, 89 S.E.2d 290, 296 (1955). "In the absence of a supplemental agreement, the parties are bound by the terms of the contract and recovery, if any, is controlled by its provisions." *Thompson-Arthur Paving Co. v. N.C. Dep't of Transp.*, 97 N.C. App. 92, 95, 387 S.E.2d 72, 74, *disc. review denied*, 327 N.C. 145, 394 S.E.2d 186 (1990); *see also Kinston v. Suddreth*, 266 N.C. 618, 621, 146 S.E.2d 660, 662-63 (1966) (discussing a party's ability to limit damages based on a contract provision). In construing a contract, the courts are to give full effect to each unambiguous contractual provision. *Singleton v. Haywood Elec. Membership. Corp.*, 357 N.C. 623, 629, 588 S.E.2d 871, 875 (2003) (stating that "various terms of the [contract] are to be harmoniously construed,

---

2. An examination of Plaintiffs' complaint reveals the presence of many references to the Bulletin. According to well-established North Carolina law, this document (which is attached to Defendant's answer) is properly before the Court for purposes of considering the validity of Plaintiff's challenge to the trial court's order. *N.C. Concrete Finishers, Inc. v. N.C. Farm Bureau Mut. Ins. Co.*, 202 N.C. App. 334, 336, 688 S.E.2d 534, 535 (2010) (noting that the trial court, in considering a motion for judgment on the pleadings lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c), is only entitled to "'consider facts properly pleaded and documents referred to or attached to the pleadings'") (quoting *Reese v. Mecklenburg County*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009), *disc. rev. denied*, 364 N.C. 242, 698 S.E.2d 653 (2010)).

and if possible, every word and every provision is to be given effect") (alteration in original); *see also Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 687, 443 S.E.2d 357, 359 (1994) (stating that, "[w]here the policy language is clear and unambiguous, the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written"), *disc. review improvidently granted*, 340 N.C. 353, 457 S.E.2d 300 (1995). As a result, determining whether Plaintiffs have adequately alleged a "breach of the terms of that contract" requires us to examine the clear and unambiguous procedural provisions set out in the Bulletin in light of the factual allegations set out in the pleadings. *Poor*, 138 N.C. App. at, 26, 530 S.E.2d at 843.

In their complaint, Plaintiffs allege that the Bulletin constituted an enforceable contract between Defendant and themselves and that numerous provisions set out in the Bulletin were violated during the proceedings leading up to the making of the initial disciplinary decision and in connection with Plaintiffs' appeal from that initial disciplinary decision. More specifically, Plaintiffs alleged that Defendant violated the contract between the parties set out in the Bulletin in a number of ways, including violations of:

   a.   [Defendant's] written promised procedure that no student may be punished for the conduct of others;

   b.   [Defendant's] written promised procedure that a student is provided with a trained advisor . . . to seek advice from;

   c.   [Defendant's] written promised procedure that no student may be punished for failing to prevent others from violating [Defendant's] policies;

   d.   [Defendant's] written promised procedure that no student may be found responsible and punished except where the evidence meets a "clear and convincing" burden of proof that a policy violation occurred and the accused committed it (at both the Administrative Hearing and the UCB Hearing);

   e.   [Defendant's] written promised procedure that no student may be disciplined except upon a fair and impartial hearing;

   f.   [Defendant's] written promised procedure to disclose to an accused student the written evidence and

charges being presented against him to the hearing panel for his knowledge and review at least 120 hours before his disciplinary hearing;

g.  [Defendant's] written promised procedure that an accused student be provided the opportunity to rebut any witness testimony presented against him and the promised procedure that material witnesses may only present testimony that is deemed to be directly related to the accused student's case and must avoid relaying hearsay;

h.  [Defendant's] written promise[d] procedure that an accused student be notified of a hearing at least 120 hours [in] advance (notification includes the time, date and location of the hearing, evidence against them, as well as names of hearing panel members and witnesses);

i.  [Defendant's] written promised procedure that no student may be disciplined by a hearing panel without an opportunity to challenge any panel member if there is a significant conflict of interest, and the implied right to be informed of facts giving rise to such a conflict;

j.  [Defendant's] written promised procedure of the right for a student to be accompanied by an advisor to the hearing and to seek advice from anyone;

k.  [Defendant's] written promised procedure that a student found responsible by the hearing panel can appeal based on clearly stated grounds and the implied right that the appeals process must be carried out in line with the student's reasonable expectations.

Assuming, without in any way deciding, that the Bulletin created a valid contract between Plaintiffs and Defendant, we do not believe that these allegations adequately allege a breach of the parties' contract.

As we have already noted, the alleged contract between the parties must be viewed in its entirety, with Plaintiffs' right to recover for breach of contract being governed by the relevant contractual provisions. More specifically, Plaintiffs allege that Defendant breached the parties' contract because Plaintiffs were not afforded certain substantive rights and procedural protections afforded by the Bulletin during their initial disciplinary hearing or on appeal. However, the disciplinary procedures

established in the Bulletin recognize the risk that the initial hearing panel may make either substantive or procedural errors and provides a remedy for such errors in the form of further review by the Appellate Board. Put another way, we believe that the alleged contract between the parties creates a unified disciplinary system which cannot provide any basis for a breach of contract action until all relevant procedures have been completed. As a result, given the necessity for Plaintiffs to comply with all of the provisions of the alleged contract between the parties before asserting a claim for breach of contract and the existence of an internal appellate review process in the contract upon which Plaintiffs rely, no breach of contract could have occurred until Defendant had made a disciplinary decision which had been upheld throughout all stages of the contractually established review procedure.

In their complaint, Plaintiffs clearly allege that the Appellate Board overturned the initial disciplinary decision made by the hearing panel and granted them a new disciplinary hearing as the result of both the discovery of new evidence and procedural defects in the manner in which the initial disciplinary hearing was conducted and remanded the matter for further consideration. Given that the initial disciplinary decision upon which Plaintiffs rely has been reversed on appeal in accordance with procedures described in the Bulletin and that no final decision has been made with respect to the issue of whether Plaintiffs violated the applicable disciplinary rules, the pleadings clearly indicate that the disciplinary process contemplated in the Bulletin had not been completed as of the date upon which Plaintiffs filed their complaint. As a result, since no final disciplinary decision has been made, Plaintiffs are not entitled to seek an award of damages or other relief based upon Defendant's alleged failure to comply with the disciplinary procedures set out in the Bulletin.

A decision to reverse the trial court's order granting judgment on the pleadings in favor of Defendant would be tantamount to a holding that, since Plaintiffs have alleged that they were harmed by various deficiencies in the manner in which the disciplinary process had been conducted to date, they have adequately pled a breach of contract on the part of Defendant. Such a decision would, in essence, allow a student who is dissatisfied with the outcome of an initial disciplinary hearing and the appellate review of that decision to initiate civil litigation without the necessity for complying with and awaiting the outcome of all of the procedures enumerated in the Bulletin. In the event that one were to take such a position to its logical conclusion, students subject to discipline on the basis of allegedly defective procedures would be allowed

to bypass the appeal process entirely, effectively rendering the appellate review provisions contained in the Bulletin meaningless. Such an outcome would be inconsistent with the fundamental legal principles that "every provision [in a contract] is to be given effect," *Singleton*, 357 N.C. at 629, 588 S.E.2d at 875, and that any recovery for breach of contract must be "controlled by [the applicable contractual] provisions." *Thompson-Arthur Paving Co.*, 97 N.C. App. at 95, 387 S.E.2d at 74. As a result, any such decision would be inconsistent with fundamental principles of North Carolina contract law.

Although Plaintiffs note that the Appellate Board withheld their transcripts and diplomas "until such time as all charges have been resolved through the conduct system," this assertion is not sufficient to preclude the entry of an order granting judgment on the pleadings in favor of Defendant. As an initial matter, the fact that the Appellate Board withheld Plaintiffs' transcripts and diplomas has no bearing on the extent, if any, to which the disciplinary procedures set out in the Bulletin have been concluded. Secondly, and perhaps more importantly, the Bulletin itself provides that:

> At any time after the filing of a complaint, the conduct officer or designee, after consulting with a student's academic dean, may place a "disciplinary hold" on the academic and/or financial records of any student pending the outcome of proceedings or to enforce a disciplinary sanction. A "disciplinary hold" may prevent, among other things, registration, enrollment, matriculation, the release of transcripts, and the awarding of a degree.

Thus, given that the procedures prescribed in the Bulletin authorize the withholding of Plaintiffs' transcripts and diplomas during the pendency of their disciplinary proceeding and given that the disciplinary proceedings involving Plaintiffs had not been completed, the fact that the Appellate Board withheld Plaintiffs' transcripts and diplomas does not support a showing that Defendant acted in a manner which was contrary to the disciplinary procedures enumerated in the Bulletin. As a result, given that the pleadings, when construed in the light most favorable to Plaintiffs, do not suffice to support a determination that any breach of contract occurred, we conclude that the trial court did not err by granting Defendant's request for the entry judgment on the pleadings in its favor.[3]

---

3. The fact that Plaintiffs might have been unable to obtain injunctive relief at a

SAMOST v. DUKE UNIV.

[226 N.C. App. 514 (2013)]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court correctly granted judgment on the pleadings in favor of Defendant. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Chief Judge MARTIN concurs.

Judge ROBERT C. Hunter dissents by separate opinion.

HUNTER, Robert C., Judge, dissenting.

Because I believe the Student Bulletin created an enforceable contract and plaintiffs specifically pled a breach of that contract in their complaint, I conclude that the trial court erred in granting defendant's motion for judgment on the pleadings. Therefore, I respectfully dissent.

### Background

Plaintiffs Albert Samost ("Samost") and Timothy Shaughnessy ("Shaughnessy") (collectively "plaintiffs") were seniors at Duke University ("defendant") in the spring of 2011. They lived in off-campus housing. Although each plaintiff lived in his own house, their houses, along with three additional houses, all shared a one-acre backyard.

On 2 April 2011, plaintiffs hosted a party. At approximately 4:45 p.m., a neighbor requested plaintiffs turn the music down. Plaintiffs alleged they did, but the neighbor's husband made a complaint to Dr. Phail Wynn, Duke University's Vice President of Durham and Regional Affairs, reporting that the noise continued even though the music had been turned off. Defendant was also informed that plaintiffs hosted a similar party on 6 April 2011 that resulted in trash in their yard and on the street.

---

time satisfactory to them because of the nature of the disciplinary process set out in the Bulletin does not, in our opinion, tend to show that Defendant breached any contract stemming from the Bulletin. Moreover, while both Defendant's counsel and other agents of Defendant did state that Defendant did not intend to conduct any further disciplinary proceedings involving Plaintiffs, those statements do not justify the denial of Defendant's motion. In essence, these statements indicate that Defendant, after allowing Plaintiffs to graduate, to receive their diplomas, and to have access to their transcripts, had concluded the disciplinary process in Plaintiffs' favor. We are unable to see how such a result supports a determination that Defendant violated any contract arising from the Bulletin.

Based on these complaints, Duke University Assistant Dean of Students Christine Pesetski ("Assistant Dean Pesetski") notified plaintiffs she would be "launching a formal inquiry into this matter in order to determine whether to proceed with possible university disciplinary action." The university policies at issue were disorderly conduct, guests, and "other - violating ordinances and/or laws." For an explanation of Duke's disciplinary system, including policies and procedures, Assistant Dean Pesetski pointed plaintiffs to the online publication "The Duke Community Standard in Practice: A Guide for Undergraduates" (the "Bulletin").

The Bulletin is published each academic year and "expresses a standard for behavior—a set of expectations of students who claim membership in Duke's learning community." All incoming undergraduates, upon admittance, are required to sign a pledge to adhere to the values reflected in the Bulletin. Among other things, the Bulletin includes sections that describe undergraduate policies and the undergraduate disciplinary process.

On 8 April 2011, plaintiffs again hosted a party in their backyard. Two police officers responded and issued Shaughnessy a citation for a noise ordinance violation. Assistant Dean Pesetski notified plaintiffs that she knew about the 8 April 2011 party and citation. She requested plaintiffs meet with her immediately to discuss this issue. Plaintiffs' allege that instead of meeting to discuss an informal resolution in lieu of a formal hearing, Assistant Dean Pesetski referred the matter for formal university hearings.

A disciplinary hearing was held on 4 May 2011 with a five-member Undergraduate Conduct Board panel (the "UCB panel"). After a two-hour long hearing, the UCB panel voted unanimously to hold plaintiffs responsible for violating Duke's "Guest" rule and to hold Shaughnessy responsible for violating Duke's "Other - Violating Ordinances and/or Laws" rule. The UCB panel suspended plaintiffs for two semesters and ordered them to perform 50 hours of community service.

On or about 11 May 2011, plaintiffs appealed the UCB panel's decision. On 12 May, the Appellate Board vacated the UCB's decision and remanded the matter for a new hearing. The Appellate Board agreed to allow plaintiffs to participate in the upcoming commencement exercises but informed them that they would not receive their diplomas until the disciplinary charges were resolved. Graduation ceremonies and the conferment of plaintiffs' diplomas and degrees were scheduled to take place on 14 and 15 May, a Saturday and Sunday. After learning of the Appellate

Board's decision on 12 May, plaintiffs requested that the Chair of the Appellate Board reconsider its decision to remand the matter for a new hearing and its decision to withhold their diplomas.

By Friday afternoon, 13 May 2011, the Chair of the Appellate Board had not responded to plaintiffs' request for reconsideration. However, plaintiffs were contacted to schedule their rehearing before the UCB panel. That same day, plaintiffs filed a complaint in Durham County Superior Court alleging a breach of contract claim and requesting both injunctive relief and damages. With regard to the injunctive relief, plaintiffs requested defendant be enjoined from "interfering with [p]laintiffs' participation in commencement and related events, such as receiving their diplomas or placing a hold on any request for the issuance of [p]laintiffs' transcripts" and subjecting them to further disciplinary proceedings. On that same day, plaintiffs filed a motion for a temporary restraining order and preliminary injunction ("TRO"). A hearing was held that same afternoon with regard to plaintiffs' TRO. At the hearing, Duke agreed to allow plaintiffs to graduate and receive their diplomas. No TRO was filed.

Defendant sent plaintiffs letters dated 20 May 2011, after graduation exercises, informing them that defendant would not place any administrative holds on their transcripts and that their cases were considered "closed" and would not be referred to a new panel for reconsideration. It is not clear from the record whether plaintiffs were aware that their cases were "closed" or that there would be no administrative hold on their transcripts prior to the 20 May letter. On 12 August 2011, defendant filed an Answer reiterating that it would conduct no further disciplinary hearings and that the disciplinary action against plaintiffs was "close[d]." That same day, defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c). The matter came on for hearing on 9 January 2012. The trial court granted defendant's motion and dismissed plaintiffs' complaint with prejudice on 12 January 2012. Plaintiffs appealed on 18 January 2012.

## Arguments

Plaintiffs' sole argument on appeal is that the trial court erred in granting defendant's motion for judgment on the pleadings. Specifically, relying on *Ryan v. University of N.C. Hosps.*, 128 N.C. App 300, 494 S.E.2d 789, *disc. review improvidently allowed*, 349 N.C. 349, 507 S.E.2d 39 (1998), and persuasive authority from other jurisdictions, plaintiffs contend that the relationship between a university and a student is contractual in nature. The Bulletin's specific, express promises

regarding the procedural guarantees governing disciplinary matters constitute the terms of their contract. By failing to comply with those promises, defendant breached its contract with plaintiffs. I agree with plaintiffs and recognize the relationship between plaintiffs and defendant as contractual in nature. Thus, the terms of that contract include the express, nonacademic promises defendant made in the Bulletin regarding the disciplinary process, specifically the "procedural rights" afforded to "accused students." Accordingly, I believe plaintiffs' complaint sufficiently pled facts to warrant further proceedings, and the trial court erred in granting defendant's motion for judgment on the pleadings.

We review the trial court's ruling on a motion for judgment on the pleadings *de novo. Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005). "The [motion's] function is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit. A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). When determining whether to grant a motion for judgment on the pleadings, "[t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party." *Id.* (internal citations omitted). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Griffith v. Glen Wood Co., Inc.*, 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007).

The first issue the trial court was required to determine was whether the Bulletin constituted an enforceable contract. Although the majority assumes, without deciding, that the Bulletin created an enforceable contract, I must decide this issue since my ultimate conclusion requires a showing of both elements of a breach of contract claim—existence of a valid contract and breach. In support of their argument that the Bulletin's terms were enforceable, plaintiffs rely on *Ryan*. In *Ryan*, 128 N.C. App. at 301, 494 S.E.2d at 790, the plaintiff was a medical resident who was matched as a resident with the defendant University of North Carolina Hospitals. The parties entered into a one-year written contract that was renewable for each of the three years of the residency. Id. During the second year of his residency, the plaintiff alleged that the defendant planned to terminate the residency. *Id.* Plaintiff filed an action against the defendant alleging breach of contract and various other claims. *Id.*

The trial court granted the defendant's motion to dismiss on all claims. *Id.* Plaintiff appealed the dismissal of his breach of contract

claim contending that he had an "employment contract whereby [he] worked for a 'substandard wage' in 'partial consideration' for a 'training program in full compliance with the Accreditation Council for Graduate Medical Education Residency Review Committee.' " *Id.* This Court reversed noting that one of the plaintiff's claims did not involve an "inquiry into the nuances of educational processes and theories"— specifically, plaintiff alleged that the defendant breached the "Essentials of Accredited Residencies" that required a one-month rotation in gynecology. *Id.* at 302-03, 494 S.E.2d at 791. Thus, the Court held that the plaintiff alleged facts sufficient to support his breach of contract claim based on the defendant's failure to provide him a one-month rotation in gynecology. *Id.* at 303, 494 S.E.2d at 791. In support of its conclusion, the *Ryan* court cites *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992), where the Seventh Circuit concluded that a student may allege a breach of contract claim against his university if he "point[s] to an identifiable contractual promise that [the University] failed to honor." *Id.* at 302, 494 S.E.2d at 791.

Plaintiffs contend that the "identifiable contractual promise," *Ross*, 957 F.2d at 417, defendant made was to adhere to the terms and conditions regarding disciplinary proceedings stated in the Bulletin. In contrast, defendant asserts that *"Ryan* does not hold that all educational handbooks are enforceable contracts." Instead, defendant argues that this case is controlled by our caselaw holding that policies and procedures included in employment handbooks or manuals do not become enforceable unless they are expressly included in an employment contract. *See Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985) (noting that "employment manuals or policies do not become part of the employment contract unless expressly included in it"); *Black v. Western Carolina Univ.*, 109 N.C. App. 209, 213-14, 426 S.E.2d 733, 736, *writ denied,* 334 N.C. 433, 433 S.E.2d 173 (1993) (holding that because "neither of the plaintiff's employment contracts expressly incorporated the provisions of the UNC Code[,]" the Code was not an enforceable contract). Thus, pursuant to defendant's arguments, if the policies and promises in an educational handbook or manual are not specifically incorporated into a written contract between the student and the university, they are not enforceable.

In reviewing the relevant caselaw in our federal courts, the issue of whether a student handbook, which would include the Bulletin, can create a valid and enforceable contract is unsettled. For example, in *Love v. Duke Univ.*, 776 F. Supp. 1070, 1075 (M.D.N.C.1991), *aff'd,* 959 F.2d 231 (4th Cir. 1992), the court held that the academic bulletin was

not a binding contract between a student and the university. Similarly, in *Guiliani v. Duke Univ.*, No. 1:08CV502, 2010 WL 1292321, *7–8 (M.D.N.C. 2010), the court dismissed the plaintiff's breach of contract claim where the student did not allege the existence of a contract that specifically incorporated the university's handbooks and policy manuals into a contract.

However, in *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 983 (M.D.N.C. 2011), *reversed in part, affirmed in part, and dismissed in part on other grounds in Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012), the court allowed the plaintiff's breach of contract claim to proceed with regard to his allegations that the defendant failed to follow promised disciplinary procedures outlined in the Student Bulletin and Student Code of Conduct. Citing *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34-35 (1st Cir. 2007), the court held that

> a breach of contract claim would not allow for review of the substance of the disciplinary proceedings, since that is a matter left to educational discretion, a breach of contract claim could potentially reach the limited inquiry of whether Duke failed to follow promised procedures for imposing discipline (particularly suspension) under the Code of Conduct.

*McFadyen*, 786 F. Supp. 2d at 983.

As in *McFadyen*, other federal courts have construed student handbooks and manuals as binding contracts. In *Havlik*, 509 F.3d at 34, the First Circuit noted that the relationship between a student and the university is contractual and the "relevant terms of the contractual relationship between a student and a university typically include language found in the university's student handbook." In *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998), the court stated that "[t]he student-college relationship is essentially contractual in nature. The terms of the contract may include statements provided in student manuals and registration materials."

In *Ross*, 957 F.2d at 416, the Seventh Circuit, in reviewing other states' treatment of the relationship between a student and a private university or college, found that "[i]t is held generally in the United States that the basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." However, the *Ross* Court emphasized that not

all breach of contract claims against a private university or college are proper: "To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the defendant failed to honor." *Ross*, 957 F.2d at 416-17.

I find the reasoning of *McFayden* and the Seventh and First Circuits persuasive and would adopt their reasoning.[1] Accordingly, I conclude that the procedural rights afforded to students involved in the disciplinary process that are specifically stated in the Bulletin are judicially enforceable. Here, I believe that plaintiffs' complaint sufficiently pled a breach of contract claim by asserting that defendant failed to comply with those procedural rights. Plaintiffs' complaint did not challenge academic matters or attack the quality of their education, *see Ross*, 957 F.2d at 416; assert a breach of contract claim based on general policies contained in a student manual, *see McFadyen*, 86 F. Supp. 2d at 982-83; or challenge the substance of the procedural mechanism, *see id.* at 983. Plaintiffs' complaint only alleged that defendant failed to abide by the specific promises set forth in the Bulletin regarding their procedural rights in the undergraduate disciplinary system. Accordingly, I believe plaintiffs' breach of contract claim should be allowed to proceed with regard to defendant's alleged failure to comply with promised rights in their disciplinary procedures.

I note that in their brief, defendant contends that even if the Court concludes that the Bulletin constitutes an enforceable contract, plaintiffs cannot prevail on their breach of contract claim because the complaint fails to show that defendant breached the contractual provisions of the Bulletin. However, I disagree. Here, plaintiffs have alleged facts that, when treated as true, support an inference that defendant violated specific provisions of its academic disciplinary procedure, as stated in the Bulletin. While I do not express an opinion as to whether plaintiffs would ultimately prevail in their claims, I do believe that this aspect of defendant's argument is more appropriate in a summary judgment motion.

---

1. It is important to note that while students facing suspension or expulsion from *public* schools are entitled to procedural due process pursuant to the 14th Amendment to the United States Constitution, *see Goss v. Lopez*, 419 U.S. 565, 576, 42 L. Ed. 2d 725, 739 (1975), and Article I, Section 19 of the North Carolina Constitution, *see Sneed v. Greensboro City Bd. of Ed.*, 299 N.C. 609, 618, 264 S.E.2d 106, 113 (1980), students at *private* universities and colleges are not afforded this same constitutional protection since there is no state action, *see N.C. Nat. Bank v. Burnette*, 297 N.C. 524, 535, 256 S.E.2d 388, 394 (1979) (noting that the constitutional due process protects individuals only where there has been state action).

The majority holds that there has been no breach until defendant made a decision which was upheld in all stages of the review procedure. Thus, since the disciplinary process had not been completed on the date at which plaintiffs filed their complaint, there has been no breach. Therefore, plaintiffs are not entitled to seek an award of damages or other relief according to the majority. In other words, the majority holds that plaintiffs would not be entitled to seek an award of damages or other relief for breach of contract until the UCB panel reheard the case, made a decision, plaintiffs had a chance to appeal that decision, and the Appellate Board made a final decision.

However, I disagree with the majority's conclusion that plaintiffs were required to wait to file their complaint until all disciplinary proceedings were completed for two primary reasons. First, the majority's conclusion ignores the nature of one of plaintiffs' requested forms of relief, injunctive relief. Plaintiffs requested the trial court enjoin defendant from interfering with their participation in graduation exercises, including receiving their diplomas or placing a hold on their academic transcripts. While the Appellate Board had agreed to let plaintiffs participate in commencement exercises, it had informed them that they would not receive their diplomas and their transcripts would be placed on hold. All of the disciplinary proceedings necessary to render a final decision would have occurred after graduation. Thus, since graduation activities were to occur that Saturday and Sunday, plaintiffs had to file for injunctive relief that Friday afternoon or else they would lose their opportunity to obtain this relief prior to graduation. Because plaintiffs' request for damages also stemmed from the breach of contract claim, plaintiffs properly included their request for damages in their complaint.

Second, for all intents and purposes, defendant's decision to not pursue further disciplinary action against plaintiffs constituted a final decision. In addition, this decision to "close" the proceedings was reflected in the parties' pleadings. Defendant sent plaintiffs letters on 20 May specifically stating that it considered the disciplinary matters against them "closed" and informing them that it would not be referring their case to a new UCB panel. In its Answer, defendant noted this and attached a copy of the 20 May 2011 correspondence. At the hearing on defendant's motion for judgment on the pleadings, defendant emphasized this point on at least two occasions. Thus, these statements were included in the parties' pleadings and made known to the trial court at the time it ruled on the motion for judgment on the pleadings.

Based on these reasons, I respectfully disagree with the majority's conclusion that granting defendant's motion for judgment on the

pleadings was proper because the disciplinary proceedings had not been "completed." I believe that the majority's holding, which concludes otherwise, would put plaintiffs in a position where they were unable to obtain appropriate relief from either defendant or the courts.

## Conclusion

Because I believe that plaintiffs have successfully pled a breach of contract claim, I would hold that the trial court erred in granting defendant's motion for judgment on the pleadings. Accordingly, I would reverse and remand the matter to the trial court for further proceedings.