IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-4

No. COA20-389

Filed: 2 February 2021

Halifax County, No. 19-E-182

HARLEY ELIZABETH SHEARIN, Petitioner,

v.

CORA B. BROWN, CURTIS JULIAN BLOCKER, SUE B. COMEAUX, PAUL C. BLOCKER, PATRICIA B. GILBERT, JOHN BLOCKER, JIMMY BLOCKER, BOBBY M. BLOCKER, SYLVIA B. LUCAS, ARTHUR CLEADES MULLIS, JR., DEBRA MULLIS HELMS, JAMES RAY SHEARIN, JEWEL LEE JAYNES, DONNIE SHEARIN, DAVID SHEARIN, WARREN LYNN SHEARIN, DANNY SHEARIN, FRANCES S. HUNT, HENRY D. SHEARIN, JR., Individually and in his capacity as Administrator of the Estate of GEORGE WADE SHEARIN, and BETSY S. JONES, Respondents.

Appeal by Petitioner from judgment entered 5 February 2020 by Judge Josephine K. Davis in Halifax County Superior Court. Heard in the Court of Appeals 12 January 2021.

*Kirk, Kirk, Howell, Cutler & Thomas, L.L.P., by Candace M. Seagroves, for Petitioner-Appellant.*

*Ward and Smith, P.A., by Michael J. Parrish and E. Bradley Evans, for Respondents-Appellees Cora B. Brown, Julian Blocker, Sue B. Comeaux, Paul C. Blocker, John Blocker, Jimmy Blocker, Bobby M. Blocker, Sylvia B. Lucas, Arthur Cleades Mullis, Jr., Debra Mullis Helms, James Ray Shearin, Jewel Lee Jaynes, Donnie Shearin, David Shearin, Warren Lynn Shearin, Danny Shearin, Frances S. Hunt, Henry D. Shearin, Jr., Individually, and Betsy S. Jones.*

*No brief filed by Respondent-Appellee Patricia B. Gilbert.*

*No brief filed by Respondent-Appellee Henry D. Shearin, Jr., in his capacity as Administrator of the Estate of George Wade Shearin.*

INMAN, Judge.

¶ 1 Harley Elizabeth Shearin ("Petitioner") appeals from an order dismissing her petition to be declared the sole heir to the Estate of George Wade Shearin ("Decedent") and granting judgment on the pleadings in favor of Decedent's other heirs ("Respondents"). Petitioner contends that her deceased father, Timothy Wade Shearin ("Timothy"), was equitably adopted by Decedent and that she is the sole heir to Decedent's Estate under North Carolina's intestacy statutes. After careful review, we affirm the trial court's judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

¶ 2 The pleadings below, which we are required to review in a light most favorable to Petitioner, disclose the following:

¶ 3 Timothy, Decedent's only child, was born to Decedent and his then-wife, Vela Shearin, in 1967. While Timothy was a young child, Vela Shearin divorced Decedent and married Charles Verman Jenkins ("Mr. Jenkins") in Virginia. Mr. Jenkins legally adopted Timothy at age nine, and Timothy changed his last name from Shearin to Jenkins. Timothy lived with Mr. Jenkins until at least age 18 before moving back to North Carolina at age 21.

¶ 4     Timothy reconnected with his biological father upon his return to the state, with Decedent providing a cabin for Timothy on a tract in Halifax County owned by Decedent. Decedent paid for and helped build a workshop for Timothy behind the cabin, and he purchased a pontoon boat for Timothy's use. He also paid for Timothy's college tuition and hosted a party when Timothy graduated.

¶ 5     Timothy and Decedent also made their father-son relationship known in other, more public ways. A 1993 newspaper article about Timothy's mini stock car racing career listed Decedent as his father, and Timothy changed his last name back to Shearin in 1995. When Timothy got married two years later, Decedent paid for the rehearsal dinner, was identified as Timothy's father in the local paper's marriage announcement and the wedding program, served as Timothy's best man in the wedding ceremony, and witnessed the marriage certificate as Timothy's father. Timothy and his new wife continued to live in a home provided by Decedent, who later paid to survey and clear land on his property so that the newlyweds could build a larger home.

¶ 6     Petitioner was born to Timothy and his wife in May 1999, and the birth announcement acknowledged Decedent as her grandfather. In December of that year, at age 32, Timothy died in a work-related accident. His death was reported in a newspaper article, which again identified Decedent as Timothy's father. Decedent received accidental death benefits as a beneficiary on Petitioner's policy and was

listed as Timothy's father on the death certificate. A few months after Timothy's funeral, Decedent bought three burial plots surrounding Timothy's grave.

¶ 7        Petitioner and Decedent developed a close relationship following Timothy's death, and Decedent publicly expressed an intention that Petitioner receive Decedent's assets someday. Decedent died intestate in February 2019, nearly a decade after his son's death. Decedent's obituary identified Petitioner as Decedent's only grandchild.

¶ 8        Following Decedent's passing, Respondent Henry D. Shearin, Jr., applied for letters of administration for Decedent's estate. That application listed Respondents— not Petitioner—as the only heirs to Decedent's estate. Letters of Administration were subsequently issued to Henry D. Shearin, Jr.

¶ 9        Having been omitted from the list of heirs to Decedent's estate, Petitioner filed a petition to ascertain heirs, for declaratory judgment, and to revoke the letters of administration on the grounds that she was the sole heir under North Carolina's intestacy statutes by virtue of Decedent's alleged equitable adoption of her father. After the filing of their answers and the close of pleadings, Respondents filed a motion for judgment on the pleadings on the ground that "the facts alleged cannot sustain a finding of equitable adoption or that Petitioner is an heir of the Decedent as a matter of law." The trial court heard arguments on 13 January 2020, granted the motion, and entered judgment for Respondents on 5 February 2020. Petitioner filed timely

notice of appeal.

## II. ANALYSIS

¶ 10 Both parties agree that the disposition of this appeal is controlled by *Lankford v. Wright*, 347 N.C. 115, 489 S.E.2d 604 (1997), in which our Supreme Court applied the doctrine of equitable adoption for the first and only time. That decision, as the lone appellate decision employing the doctrine, delineates equitable adoption's necessary elements and expressly limits application of the doctrine to particular facts and circumstances. *Id.* at 118-20, 489 S.E.2d at 606-07. Petitioner acknowledges that *Lankford* was "narrowly focused on the case facts before it[,]" which concerned the equitable adoption of a minor by a foster parent, but requests this Court "expand the scope of . . . *Lankford* . . . to provide for the equitable adoption of an adult" so that she—rather than the equitably adopted person, as in *Lankford*—can inherit the entirety of Decedent's estate under North Carolina's intestacy statutes. Because the circumstances presented here fall outside the operative facts of *Lankford* and this Court lacks any authority to redraw the boundaries of the doctrine as delineated in that decision, we hold that the trial court properly entered judgment for Respondents.

### 1. *Standard of Review*

¶ 11 We review a trial court's ruling on a motion for judgment on the pleadings *de novo*. *Barefoot v. Rule*, 265 N.C. App. 401, 403, 828 S.E.2d 685, 687 (2019) (citing *Samost v. Duke Univ.*, 226 N.C. App. 514, 517-18, 742 S.E.2d 257, 259-60 (2013)).

Under this standard, the reviewing court:

> is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Samost*, 226 N.C. App. at 517, 742 S.E.2d at 517 (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974)). Judgment on the pleadings is proper when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* at 518, 742 S.E.2d at 260 (citation and quotation marks omitted).

### 2. Lankford *And Its Limits*

*Lankford* presented a single question to the Supreme Court: "whether North Carolina recognizes the doctrine of equitable adoption." 347 N.C. at 116, 489 S.E.2d at 605. In that case, a mother entered into an adoption agreement with her neighbors, the Newtons, for the care of her minor daughter. *Id.* at 117, 489 S.E.2d at 605. The daughter moved in with her new family, took Newton as her last name, and was known at school and in the community as the Newtons' daughter. *Id.* She was identified in Mr. Newton's obituary as his sole surviving daughter, referred to Mrs. Newton as "mother," and obtained a Social Security card under their shared last

name. *Id.* She opened a bank account with Mrs. Newton and sent her foster mother a portion of her income while serving in the Navy. *Id.* When Mrs. Newton grew sick, her foster daughter took leaves of absence to provide care. *Id.*

¶ 13 Mrs. Newton passed away in 1994 without formally finalizing a legal adoption of her foster daughter. *Id.* Though she had prepared a will naming her foster daughter as co-executrix and making specific bequests to her, it could not be probated due to defacement of portions of the will by an unknown person. *Id.* Mrs. Newton was thus deemed to have died intestate, and her foster daughter filed a declaratory judgment action to determine whether she was a legal heir to her foster mother's estate. *Id.*

¶ 14 Our Supreme Court held that, based on the above facts, the plaintiff had been equitably adopted by the Newtons. *Id.* at 118, 489 S.E.2d at 606. Absent any precedent and tasked with establishing when and how the newly recognized doctrine could be applied, the Court stated that the remedy of equitable adoption is available "to protect the interest of a person who was supposed to have been adopted *as a child* but whose adoptive parents failed to undertake the legal steps necessary to formally accomplish the adoption." *Id.* (citation and quotation marks omitted) (emphasis added). It further explained that the doctrine "does not confer the incidents of formal statutory adoption; it merely confers rights of inheritance upon the foster child in the event of intestacy of the foster parents." *Id.* (footnote omitted).

The Supreme Court in *Lankford* noted that the new doctrine it recognized "is limited to facts comparable to those presented here. . . . A majority of the jurisdictions recognizing the doctrine have successfully limited its application to claims made by an equitably adopted child against the estate of the foster parent. By its own terms, equitable adoption applies only in limited circumstances." *Id.* at 119, 489 S.E.2d at 606 (citations omitted). The Court followed this statement by setting forth the doctrine's necessary elements:

> (1) an express or implied agreement to adopt the child,
>
> (2) reliance on that agreement,
>
> (3) performance by the natural parents of the child in giving up custody,
>
> (4) performance by the child in living in the home of the foster parents and acting as their child,
>
> (5) partial performance by the foster parents in taking the child into their home and treating the child as their own, and
>
> (6) the intestacy of the foster parents.

*Id.* at 119, 489 S.E.2d at 606-07 (citing 2 Am.Jur.2d *Adoption* § 54 (1994)). The Supreme Court crafted these elements with an eye towards constraint, writing that:

> [t]hese elements . . . limit the circumstances under which the doctrine may be applied. Specifically, the doctrine acts only to recognize the inheritance rights of a child whose parents died intestate and failed to perform the formalities of a legal adoption, yet treated the child as their own for all intents and purposes. The doctrine is invoked for the sole

benefit of the foster child . . . .

*Id.* at 119, 489 S.E.2d at 607-08 (citations omitted). It then applied the doctrine to the facts before it, concluding that they "fit squarely within the parameters of the doctrine of equitable adoption and are indicative of the dilemma the doctrine is intended to remedy." *Id.* at 120, 489 S.E.2d at 607.

### 3. *This case is different from* Lankford

¶ 16          The facts of this case differ materially from those present in *Lankford* and preclude application of the equitable adoption doctrine as delineated by our Supreme Court. We decline Petitioner's invitation to expand *Lankford*'s holding.

¶ 17          This case does not involve a person who was: (1) taken in as a minor by foster parents; (2) raised by those foster parents from childhood as if he was their legally adopted son; and (3) effectively disinherited by his foster parents' failure to comply with adoption's legal formalities. Instead, it revolves around two biologically—but not legally—related adults who formed a personal relationship after both were over the age of majority. Timothy's age at the time he reconnected with Decedent alone precludes Petitioner from invoking the doctrine of equitable adoption, which, per our Supreme Court, "is a remedy to protect the interest of a person who was supposed to have been adopted *as a child*[.]" *Id.* at 118, 489 S.E.2d at 606 (citation and quotation marks omitted) (emphasis added). The Court later stated that "the doctrine is limited to facts comparable to those presented [in *Lankford*]," *id.* at 119, 489 S.E.2d at 606,

and, in reciting the operative facts that established the necessary elements of equitable adoption, specifically relied on the fact that "the Newtons treated plaintiff as their child by taking her into their home, giving her their last name, and *raising her as their child*[.]" *Id.* at 120, 489 S.E.2d at 607 (emphasis added). We hold that the equitable adoption doctrine recognized in *Lankford* is unavailable to vindicate Petitioner's interests because this case involves a purported adoption of an adult.[1]

¶ 18    Though Timothy's age alone precludes application of the equitable adoption doctrine, other facts distinguish this case from *Lankford*. For example, Petitioner is not the adoptee in the equitable adoption she propounds. Our Supreme Court in *Lankford* observed that "[a] majority of the jurisdictions recognizing the doctrine have successfully limited its application to claims *made by an equitably adopted child* against the estate of the foster parent . . . for the *sole benefit of the foster child*[.]" *Id.*

---

[1] This prohibition against employing the doctrine to recognize an equitable adoption of an adult also "appears to be the substantially unanimous view of American courts." *Miller v. Paczier*, 591 So.2d 321, 322 (Fla. Dist. Ct. App. 1991); *see also Dampier v. Williams*, 493 S.W.3d 118, 124 (Tx. Ct. App. 2016) (noting "the refusal to allow an adult to be adopted by estoppel is in line with, what appears to be, the majority rule" and, "[a]s an intermediate appellate court, . . . declin[ing] . . . to broaden the doctrine to apply to adoption of adults" (citations omitted)). While Petitioner cites two decisions from other jurisdictions that touch on the issue of equitable adoption between adults, she acknowledges that they support only "a potential *extension* of the theory . . . to . . . the context of an adult adoption." (emphasis added). *See Matter of Mazzeo*, 95 A.D.2d 91, 93-94 (N.Y. S. Ct. 1983) (holding doctrine could be applied to an adult adoption to establish the adoptee as a creditor of an estate but not as an heir); *Herrera v. Clau*, 772 P.2d 682, 683 (Col. App. 1989) (resolving whether equitable adoption of two adult stepchildren gave them standing to bring a wrongful death action).

*Opinion of the Court*

at 119, 489 S.E.2d at 606 (citation omitted) (emphasis added).[2]

We acknowledge Petitioner's argument that the policy concerns undergirding our intestacy statutes support extending equitable adoption beyond *Lankford*'s facts and its limited expression of the doctrine. However, "[w]e are an error-correcting body, not a policy-making or law-making one." *Connette v. Charlotte-Mecklenburg Hospital Authority*, ___ N.C. App. ___, ___, 845 S.E.2d 168, 172 (2020) (citation omitted). Furthermore, *Lankford* is a comprehensive opinion from our Supreme Court that we cannot modify, as "[o]nly the Supreme Court can do that." *Id.* So, while "it is the unique role of courts to fashion equitable remedies to protect and promote the principles of equity," *Lankford*, 347 N.C. at 120, 489 S.E.2d at 607, this Court, as an intermediate appellate court, cannot extend equitable adoption beyond the "limited circumstances" established by our Supreme Court. *Id.* at 119, 489 S.E.2d at 606.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting judgment

---

[2] Petitioner points out that West Virginia allows the heir of an equitably adopted person to avail themselves of the doctrine to take from the adopter's estate by intestacy. *First Nat. Bank In Fairmont v. Phillips*, 344 S.E.2d 201 (W.Va. 1985). However, West Virginia, unlike North Carolina, does not follow the majority of states in its expression of the doctrine because it does not require a purported adoptee to show an implied or express adoption contract. *Id.* at 203. Also, West Virginia requires an adoptee "to prove by clear, cogent and convincing evidence that he has stood *from an age of tender years* in a position [e]xactly equivalent to a formally adopted child." *Wheeling Dollar Sav. & Trust Co. v. Singer*, 250 S.E.2d 369, 373 (W.Va. 1978) (emphasis added).

on the pleadings for Respondents.

AFFIRMED.

Judges DILLON and ARROWOOD concur.