Cutter v. Vojnovic, 2023 NCBC 7.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 10487

ERNEST CUTTER III, individually
and derivatively on behalf of A
COMMON LAW GENERAL
PARTNERSHIP d/b/a HOT DOG
SHOPPE,

Plaintiff,

v.

GREGORY VOJNOVIC; and HOT
DOG SHOPPE HOLDINGS, LLC,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE
PLEADINGS**

1.  **THIS MATTER** is before the Court on Defendants Gregory Vojnovic ("Vojnovic") and Hot Dog Shoppe Holdings, LLC's ("Holdings"; together, "Defendants") Motion for Partial Judgment on the Pleadings (the "Motion"), (ECF No. 46), pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure (the "Rule(s)").

2.  Having considered the Motion, the related briefing, the relevant materials associated with the Motion, and the arguments of counsel at the hearing on the Motion, the Court **GRANTS** the Motion in part and **DENIES** the Motion in part as set forth below.

> *James, McElroy & Diehl, P.A., by J. Alexander Heroy and Jennifer M. Houti, for Plaintiff Ernest Cutter, III, individually and derivatively on behalf of A Common Law General Partnership d/b/a Hot Dog Shoppe.*
>
> *Nelson Mullins Riley & Scarborough LLP, by Thomas G. Hooper, for Defendants Gregory Vojnovic and Hot Dog Shoppe Holdings, LLC.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

3.     The Court does not make findings of fact on motions for judgment on the pleadings under Rule 12(c) and instead recites only those allegations in the pleadings and matters of record that are relevant and necessary to the Court's determination of the Motion.  *See, e.g.*, *Blusky Restoration Contractors, LLC v. Brown*, 2022 NCBC LEXIS 124, at *4 (N.C. Super. Ct. Oct. 20, 2022).

4.     Plaintiff Ernest Cutter, III ("Plaintiff" or "Cutter") alleges that he and Defendant Vojnovic were general partners in a two-partner, common-law general partnership (the "Partnership") formed in fall 2019 to purchase three family-owned hot dog restaurants in Ohio (collectively, "Jib Jab").[1]  Cutter alleges that Vojnovic thereafter misappropriated this Partnership opportunity and, in spring 2021, purchased Jib Jab through Defendant Holdings, a corporation Vojnovic "formed for that purpose."[2]  Cutter pleads that while the Partnership intended for Holdings to purchase Jib Jab, "Vojnovic was aware that the Partnership fully intended to pursue the opportunity and acquire Jib Jab" and closed the purchase "to the complete exclusion of the Partnership and Cutter."[3]

---

[1] (Compl. ¶¶ 1–3, 12, 15–18.)  Each restaurant comprising Jib Jab was organized as a separate corporation: Hot Dog Shoppe, Inc., Hot Dog Shoppe & Beanery, Inc., and Jib Jab Hot Dog Shoppe, Inc.  (Compl. ¶ 12.)

[2] (Compl. ¶¶ 22, 30–34.)

[3] (Compl. ¶¶ 32, 33.)

5.      Cutter filed the Complaint initiating this action on 1 July 2021, and, after dismissing all claims against certain Defendants,[4] currently asserts the following claims: (i) a direct claim against Vojnovic for breach of an oral general partnership agreement; (ii) direct and derivative claims against Vojnovic for misappropriation of business opportunity and breach of fiduciary duty; (iii) direct and derivative claims against Vojnovic and Holdings for tortious interference with prospective economic advantage and constructive trust; and (iv) direct claims against the Partnership for dissolution and accounting.[5]

6.      On 24 October 2022, Defendants filed the Motion, which seeks to dismiss a narrow subset of Plaintiff's claims: Plaintiff's (i) derivative claim for breach of fiduciary duty against Vojnovic, (ii) derivative claim for tortious interference with prospective economic advantage against both Defendants, (iii) direct claim against Holdings for tortious interference with prospective economic advantage, (iv) direct and derivative misappropriation of business opportunity claim against Vojnovic, and (v) direct and derivative claim for constructive trust against both Defendants.[6]

---

[4] Cutter initially asserted claims against two additional entities, Hot Dog Shoppe Operating, Inc. ("Operating") and Hot Dog Shoppe Franchising, LLC ("Franchising"), which he alleged were formed "for the specific purpose of diverting the Jib Jab opportunity away from the Partnership and to Vojnovic's benefit." (Compl. ¶ 31.) Cutter voluntarily dismissed his claims against these entities, however, on 1 November 2021. (Partial Voluntary Dismissal, Without Prejudice, ECF No. 18.)

[5] (Compl. ¶¶ 37–70.)

[6] (Defs.' Mot. Partial J. Pleadings, ECF No. 46.)

7. After full briefing by the parties, the Court held a hearing on the Motion on 10 January 2023 (the "Hearing"), at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

8. Rule 12(c) is intended "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit and is appropriately employed where all the material allegations of fact are admitted in the pleadings and only questions of law remain." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974)).

> In considering a motion for judgment on the pleadings, all well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. As with a motion to dismiss, the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. A Rule 12(c) movant must show that the complaint fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar to a cause of action.

*Tully v. City of Wilmington*, 370 N.C. 527, 532 (2018) (cleaned up).

9. Before a Rule 12(c) motion may be granted, however, "[t]he party moving for judgment on the pleadings must show that no material issue of fact exists and that he is entitled to judgment as a matter of law." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682 (1987). Moreover, "each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits." *Newman v. Stepp*, 376 N.C. 300, 305 (2020) (quoting *Ragsdale*, 286 N.C. at 137). "All allegations in the nonmovant's pleadings, except conclusions of law, legally

impossible facts, and matters not admissible in evidence at [ ] trial, are deemed admitted by the movant for purposes of the motion." *Shearin v. Brown*, 276 N.C. App. 8, 11 (2021) (quoting *Samost v. Duke Univ.*, 226 N.C. App. 514, 517). However, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Izydore v. Alade*, 242 N.C. App. 434, 438 (2015) (quoting *Strickland v. Hedrick*, 194 N.C. App. 1, 20 (2008)).

## III.

## ANALYSIS

### A. Cutter's Derivative Claims

10. Defendants first challenge Cutter's assertion of derivative claims against them, contending that, absent contract or consent, North Carolina law does not permit a general partner to bring a claim derivatively on behalf of the general partnership against another general partner. Defendants therefore argue that Cutter's derivative claims must be dismissed for lack of standing.[7] The Court agrees with Defendants.

11. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *In re A.S.M.R.*, 375 N.C. 539, 542 (2021) (cleaned up). In the general partnership context, our Supreme Court has held that "one partner may not sue in his own name, and for his own benefit, upon a cause of action in favor of a partnership" because, in that instance, "the partnership is the real party in interest." *Godwin v. Vinson*, 251 N.C. 326, 327 (1959). Here, Cutter has not alleged that he

---

[7] (*See* Mem. Law Supp. Defs.' Mot. Partial J. Pleadings 8–14 [hereinafter "Defs.' Br. Supp."], ECF No. 47.)

and Vojnovic agreed, either in their oral Partnership agreement or otherwise, that Cutter could assert the Partnership's claims or that the Partnership voted to approve the assertion of Partnership claims against Vojnovic. Instead, Cutter seeks to assert claims derivatively on behalf of the Partnership against Vojnovic.

12. Unlike North Carolina's statutes governing corporations,[8] limited liability companies,[9] and limited partnerships,[10] however, which permit derivative actions on behalf of these entities, the North Carolina Uniform Partnership Act ("NCUPA"), N.C.G.S. § 59-31–73, does not contain similar provisions authorizing one general partner to assert a derivative action against another general partner on behalf of a general partnership. Because the General Assembly has repeatedly shown that it knows how to authorize a derivative action by statute in similar contexts, the legislature should be presumed to have purposely chosen to exclude the same cause of action in the NCUPA. *See, e.g., N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768 (2009) ("[w]hen a legislative body includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion"); *State v. Campbell*, 878 S.E.2d 312, 321 (2022) (applying same reasoning when comparing two similar statutes); *see also In re D.L.H.*, 364 N.C. 214, 221 (2010) (recognizing that "the absence of a similar provision in [a related statute]

---

[8] N.C.G.S. §§ 55-7-40–50.

[9] N.C.G.S. §§ 57D-8-01–07.

[10] N.C.G.S. §§ 59-1001–1006.

seems to indicate a legislative intent not to [reach the same result as under the related statute]").

13. Absent an express statutory authorization, it is unsurprising that no reported North Carolina decision has held that a general partner may sue another general partner derivatively on behalf of the general partnership as Cutter seeks to do here. Cutter argues that this Court's decision in *Gillespie v. Majestic Transport, Inc.*, 2016 NCBC LEXIS 69 (N.C. Super. Ct. Sept. 9, 2016), permits his derivative claims, but *Gillespie* primarily concerned a general partner's effort to bring suit on behalf of the partnership against an unrelated non-partner who allegedly colluded with another general partner to injure the partnership. *Gillespie*, 2016 NCBC LEXIS 69, at *23–24. The *Gillespie* court permitted a derivative claim in that instance because the partnership had no recourse against the unrelated non-partner to the extent the partnership suffered injuries separate from plaintiff's since it was impractical to expect the unfaithful general partner to consent to a direct action by the partnership. *Id.* at *26. *Gillespie* did not recognize more broadly that general partners may sue each other derivatively on behalf of a general partnership as Cutter seeks to do here. Because *Gillespie* is based on materially different facts, it offers little support for Cutter's argument.

14. Moreover, there are sound reasons for the legislature not to have recognized a derivative action in this context. As one court has observed:

> We agree that the term "derivative" is an inappropriate and confusing term to use in the general partnership context. "Derivative" actions are necessary in the corporate and limited partnership context, where the shareholders and limited partners have no managerial rights and thus

must "derive" the right to sue from the entity itself. Unlike shareholders and limited partners, however, general partners all have the ability to act on behalf of the partnership, and all have management rights. Thus, general partners have no need for "derivative" action.

*George Wasserman & Janice Wasserman Goldsten Family, LLC v. Kay*, 197 Md. App. 586, 624 (2011). Unlike corporate shareholders, officers, and directors,[11] or an LLC's managers and members,[12] "partners in a general partnership owe one another fiduciary duties." *Norment v. Rabon*, 2022 NCBC LEXIS 73, at *18 (N.C. Super. Ct. July 7, 2022).[13]

15. Furthermore, the NCUPA creates an adequate remedy—a claim for an accounting[14]—through which one general partner may pursue claims directly against another general partner to obtain both equitable and monetary relief through a balancing of accounts.[15] *See, e.g.*, *Watson v. Fulk*, 19 N.C. App. 377, 380 (1973) ("The

---

[11] *See, e.g.*, *Green v. Freeman*, 367 N.C. 136, 141 (2013) (recognizing that directors and officers "are required to act in good faith, with due care, and in a manner they reasonably believe to be in the best interests of the corporation" and that shareholders, with limited exceptions, may not assert claims directly against them for violation of these duties); *see generally* Russell M. Robinson, II, *1 Robinson on North Carolina Corporation Law*, §§ 14.01–04, 16.07 (2022).

[12] *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 473–74 ("like [corporate] directors, managers of a limited liability company . . . owe a fiduciary duty to the company, and not to individual members").

[13] Some courts have recognized that a minority general partner potentially may pursue derivative claims against controlling general partners, *see, e.g.*, *Cates v. International Tel. & Tel. Corp.*, 756 F.2d 1161, 1178 (5th Cir. 1985) (applying Texas law), but those considerations are not present here since Cutter and Vojnovic are alleged to be equal partners in the Partnership.

[14] Cutter seeks an accounting in this action. (Compl. ¶¶ 60–64.)

[15] *See* N.C.G.S. § 59-52 (stating that any partner has a right to a formal account of partnership affairs "(1) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, (2) If the right exists under the terms of any agreement, (3) As provided by G.S. 59-51, (4) Whenever other circumstances render it just and reasonable.");

appropriate method for determining the exact amount which may be due the plaintiff [partner], if anything, is to require the defendant [partner], who is in possession of the essential information, to render an accounting."); *see generally In Re Southeastern Eye Center–Pending Matters*, 2022 NCBC LEXIS 22 (N.C. Super. Ct. Aug. 10, 2022). In such circumstances, a derivative action is unnecessary.

16. For the foregoing reasons, therefore, the Court concludes that North Carolina law does not permit Cutter to assert his derivative claims on behalf of the Partnership against his co-equal general partner, Vojnovic. Accordingly, Cutter's derivative claims shall be dismissed.

B.     Cutter's Direct Tortious Interference Claim Against Holdings

17. Cutter purports to assert a direct claim for tortious interference with prospective economic advantage against Defendants arising from Defendants' alleged diversion of the Jib Jab opportunity from the Partnership.[16]  Defendants move to dismiss claim against Holdings, contending that Cutter has failed to allege specific facts to support his claim.  The Court agrees with Defendants.

18. Cutter initially advanced his claim for tortious interference with prospective economic advantage against Operating and Franchising as well as Vojnovic and

---

*see also* N.C.G.S. § 59-51 (requiring every partner to "account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use . . . of its property").

[16] (Compl. ¶¶ 49–53, 65–70.)

Holdings.[17] As noted above, he alleges that Vojnovic formed Holdings to be "the legal buyer of Jib Jab"[18] and that Operating and Franchising were created "for the specific purpose of diverting the Jib Jab opportunity away from the Partnership and to Vojnovic's benefit."[19]

19. Cutter's only allegation suggesting that Holdings was involved in the alleged diversion of the Jib Jab opportunity appears in paragraph 51 of his Complaint:

> Defendants were aware that Cutter had identified the Jib Jab opportunity and engaged in initial negotiations with the Sellers, and that ARC held the LOI for the Jib Jab deal. Defendants nonetheless diverted the business opportunity away from Cutter and ARC and to his [sic] own advantage, preventing Cutter and ARC from closing on the deal with Jib Jab.[20]

---

[17] The parties dispute whether Cutter's claim for tortious interference with prospective economic advantage is governed by the law of North Carolina (where Cutter lives), Georgia (where Vojnovic lives and Holdings is organized), or Ohio (where Jib Jab operates). The Court need not decide choice of law for purposes of the Motion, however, because the Court and the parties agree that each state requires a plaintiff asserting a claim for tortious interference with prospective economic advantage to allege the defendant's interference in similar terms. *See, e.g.*, *Walker v. Sloan*, 137 N.C. App. 387, 393 (2000) (requiring plaintiffs to allege that defendants "induc[ed] a third party to refrain from entering into a contract with [plaintiffs] which would have ensued but for the interference"); *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 745 S.E.2d 806, 808 (Ga. Ct. App. 2013) (requiring plaintiff to show that "defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff"); *Brookside Ambulance v. Walker Ambulance Serv.*, 112 Ohio App. 3d 150, 156 (1996) (requiring plaintiff to show that defendant took "intentional and improper action to prevent a contract formation, procure a contractual breach, or terminate a business relationship").

[18] (Compl. ¶ 22.)

[19] (Compl. ¶ 31.)

[20] (Compl. ¶ 51.)

20.     Not only is Holdings accused jointly with Vojnovic, Operating, and Franchising in this allegation, but Cutter's allegation is also plainly conclusory and lacks any supporting facts.  In particular, Cutter does not allege any facts showing how Holdings diverted the Jib Jab opportunity or what Holdings did to wrongfully interfere.    Cutter's allegations involving the "Hot Dog Shoppe"—defined as Operating, Franchising, and Holdings—offer no further factual detail and simply assert that Vojnovic "closed the purchase of Jib Jab through Hot Dog Shoppe."[21]

21.     North Carolina law is clear that "conclusory allegations that track the elements of a [ ] claim . . . alone are insufficient to state a legally sufficient claim[.]" *Radcliffe v. Avenel Homeowners Ass'n*, 248 N.C. App. 541, 572 (2016); *see, e.g., Meyer v. Walls*, 347 N.C. 97, 114 (1997) (holding that conclusory allegations are insufficient to withstand a motion to dismiss).  Cutter's direct claim against Holdings for tortious interference relying on such conclusory allegations must therefore be dismissed.[22] *See, e.g.*, *Morris Int'l v. Packer*, 2020 NCBC LEXIS 122, at *18–19 (N.C. Super. Ct. Oct. 15, 2020) (dismissing tortious interference claim where plaintiff failed to allege facts showing "how . . . [defendant] interfered with [the contract]" or "what . . . [defendant] did to induce [the breach]."); *Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC LEXIS 24, at *23–24 (N.C. Super. Ct. Apr. 30, 2012) (dismissing tortious

---

[21] (Compl. ¶ 32.)

[22] Given that this case was filed in July 2021 and discovery is nearly complete, the Court elects, in its discretion, not to invite repleading of Cutter's tortious interference claim at this late date.  Therefore, the Court shall exercise its discretion to enter its dismissal of this claim with prejudice.  *See, e.g.*, *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013) ("The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]'").

interference claim for failure to state a claim where the complaint only advanced conclusory allegations that non-outsiders acted maliciously).

C. Cutter's Direct Claim for Misappropriation of Business Opportunity Against Vojnovic

22.    Defendants next seek to dismiss Cutter's direct claim for misappropriation of business opportunity against Vojnovic, contending that it is unnecessarily duplicative of Cutter's claim for breach of fiduciary duty.[23]  The Court agrees with Defendants.

23.    "Misappropriation of [business] opportunity is 'a species of the duty of a fiduciary to act with undivided loyalty; . . .  in general, a [partner] is under a fiduciary obligation not to divert . . . [a] business opportunity for his own personal gain." *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at \*38 (N.C. Super. Ct. Oct. 21, 2016) (quoting *Meiselman v. Meiselman*, 309 N.C. 279, 307 (1983)).[24]  As Defendants point out, this Court has previously dismissed a misappropriation claim as unnecessarily duplicative of a breach of fiduciary duty claim, citing *Plasman* and *Meiselman*.  *See Zagaroli v. Neil*, 2017 NCBC LEXIS 103, at \*34 (N.C. Super. Ct. Nov. 7, 2017).

24.    Cutter argues in opposition that his claim is not duplicative of his fiduciary duty claim and instead asserts that the claim "arises from Vojnovic's improper taking of the assets contributed by Plaintiff – individually – 'without his knowledge,

---

[23] (Defs.' Br. Supp. 20–21.)

[24] The parties appear to agree that North Carolina law applies to Cutter's misappropriation claim.

participation, or consent' and to Vojnovic's own benefit."[25] But Cutter ignores that a claim for misappropriation of business opportunity must be premised on a duty not to misappropriate. That duty is typically grounded in a fiduciary relationship, like the duty owed by one partner to another, or is created by contract, such as in a partnership agreement. Based on Cutter's pleading here, either is equally likely as the source of Vojnovic's duty.[26] But in either event, Cutter has pleaded claims—breach of fiduciary duty and breach of the oral Partnership agreement—that render his misappropriation claim unnecessarily duplicative of one or both and thus subject to dismissal.[27] Accordingly, Cutter's direct claim against Vojnovic for misappropriation of business opportunity shall be dismissed.[28]

---

[25] (Pl.'s. Mem. Law Opp'n Defs.' Mot. Partial J. Pleadings 13, ECF No. 49.)

[26] Cutter's misappropriation claim alleges that, "[i]n violation of Plaintiff's rights," Vojnovic misappropriated the Partnership's assets "to consummate the Jib Jab opportunity with an outside partner and financial source, and appropriate for themselves [sic] the Partnership's valuable business opportunity" and did so "without right, participation or authorization required of Plaintiff as a general partner of the Partnership." (Compl. ¶¶ 57–58.)

[27] Cutter's misappropriation allegations are nearly identical to his breach of fiduciary duty allegations, (*see* Compl. ¶ 47 (alleging that Vojnovic "breached his fiduciary duty to Cutter and the Partnership . . . by usurping a Partnership opportunity and diverting the Jib Jab opportunity away from the Partnership")), and his breach of contract claim, (*see* Compl. ¶¶ 40, 42 (alleging that Vojnovic "breached the parties' agreement by usurping the Jib Jab opportunity and diverting it away from the Partnership, as well as excluding Cutter[.]")).

[28] Cutter's suggestion at the Hearing that Vojnovic's duty not to misappropriate arises from ARC Industries, Inc.'s letter of intent to buy Jib Jab in November 2019 is neither pleaded nor reasonably inferred in the Complaint and offers Cutter no defense to the Motion. Similarly, to the extent Cutter contends, again without pleading, that his misappropriation claim is akin to a claim for conversion, that claim necessarily fails. *See, e.g., Norman v. Nash Johnson & Son's Farms, Inc.*, 140 N.C. App. 390, 414 (2000) (holding that "intangible interests such as business opportunities and expectancy interests [are not] subject to a conversion claim").

D.    Cutter's Claim for Constructive Trust

25.    Last, Defendants seek to dismiss Cutter's standalone claim for constructive trust because a constructive trust is a remedy, not a claim for relief.[29]  The Court agrees.  *See, e.g., Barefoot v. Barefoot*, 2022 NCBC LEXIS 8, *33 (N.C. Super. Ct. Feb. 2, 2022) ("[T]he imposition of a constructive trust is a remedy, not a standalone claim.").

26.    Defendants recognize that this Court has "dismissed constructive trust 'claims' but allowed litigants to continue to seek the imposition of such a trust as a remedy in several cases."[30]  Nevertheless, while apparently not objecting to similar treatment for Vojnovic here, Defendants argue that "the Court should dismiss the constructive-trust 'claim' against Holdings [ ] with prejudice and not allow Cutter to obtain the remedy of constructive trust (or any other remedy) against Holdings [ ] in this lawsuit" since the tortious interference claim shall be dismissed and is the only substantive claim asserted against Holdings.[31]  The Court disagrees.

27.    Our Supreme Court has explained that:

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Wilson v. Crab Orchard Dev. Co.*, 276 N.C.198, 211 (1970).

---

[29] (Defs. Br. Supp. 21–22.)

[30] (Defs. Br. Supp. 22.)

[31] (Defs. Br. Supp. 22.)

28.     Significantly for this Motion:

> [A] trial court may impose a constructive trust, even in the absence of fraud or a breach of fiduciary duty, upon the showing of either (1) some other circumstance making it inequitable for the defendant to retain the funds against the claim of the beneficiary of the constructive trust, or (2) that the defendant acquired the funds in an unconscientious manner.

*Houston v. Tillman*, 234 N.C. App. 691, 696 (2014) (citing *Variety Wholesalers, Inc. v. Salem Logistics Servs., LLC*, 365 N.C. 520, 530–31 (2012)).

29.     Relying on this principle, the Supreme Court held in *Variety Wholesalers* that "[d]espite the probable lack of fiduciary duty, if Ark had actual or constructive notice that Salem did not have ownership of the funds deposited in [Ark's bank] account, Ark's continued acceptance of those funds could be considered unconscientious or inequitable and could thus permit the imposition of a constructive trust." *Variety Wholesalers, Inc.*, 365 N.C. at 531.

30.     Holdings occupies a similar position to Ark in *Variety Wholesalers* and, like the plaintiff in that case, Plaintiff has pleaded facts that, taken as true, show that Holdings, acting through Vojnovic, knew Vojnovic was not entitled to the funds and benefits Vojnovic realized from his alleged misappropriation of the Jib Jab opportunity. In these circumstances, a reasonable factfinder could conclude that Holdings' acceptance of these funds or benefits was "unconscientious or inequitable," which would permit the imposition of a constructive trust against Holdings.

31.     As a result, the Court concludes that Cutter's purported "claims" for constructive trust against Vojnovic and Holdings should be dismissed but without prejudice to Cutter's right to pursue the constructive trust remedy at this stage

against both Defendants to the extent one or more claims for relief may justify such a remedy.

IV.

CONCLUSION

32.   **WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS** Defendants' Motion and **ORDERS** as follows:

   a. Plaintiff's derivative claims against Defendants are hereby **DISMISSED** with prejudice for lack of standing;[32]

   b. Plaintiff's direct claim for tortious interference with prospective economic advantage against Holdings and direct claim against Vojnovic for misappropriation of business opportunity are hereby **DISMISSED** with prejudice;

   c. Plaintiff's purported claims for constructive trust against Vojnovic and Holdings are hereby **DISMISSED** without prejudice to Cutter's right to pursue the equitable remedy of a constructive trust against Vojnovic and

---

[32] Although "[a] dismissal for lack of jurisdiction is generally a dismissal without prejudice" to permit a plaintiff to pursue the dismissed claims in a different forum, *N.C. Acupuncture Licensing Bd. v. N.C. Bd. Of Physical Therapy Examiners*, 2016 NCBC LEXIS 33, *27 (N.C. Super. Ct. Apr. 26, 2016), the fact that Plaintiff cannot pursue his derivative claims in any other forum requires that those claims be dismissed with prejudice. *See, e.g., Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (affirming dismissal with prejudice for lack of subject matter jurisdiction where plaintiffs could not cure procedural default and "no other court [had] the power to hear the case"); *see Forsythe v. N.C. Dep't of Revenue*, 2022 NCBC LEXIS 106, *10–11 (N.C. Super. Ct. Sept. 9, 2022) (to similar effect and collecting cases).

Holdings to the extent one or more claims for relief may justify such a remedy.[33]

**SO ORDERED**, this the 24th day of January, 2023.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[33] The Court recognizes that it advised the parties at the conclusion of the Hearing that it intended to grant Defendants' Motion in its entirety. The Court cautioned the parties, however, that the Court's written order may be different after further review and reflection and would constitute its formal ruling on the Motion. This Order and Opinion constitutes the final written order resolving the Motion. *See, e.g.*, *In re E.D.H.*, 381 N.C. 395, 401 (2022) ("a trial court's oral findings are subject to change before the final written order is entered.").